246 F.2d 956
 James M. LITTLEFIELD; Minnie I. Littlefield; R. S. Littlefield, also called Spencer Littlefield; Lena R. Littlefield; R. S. Littlefield, Jr.; and L. J. Littlefield, Appellants,
v.
Paul E. NELSON, Appellee.
 No. 5540.
 United States Court of Appeals Tenth Circuit.
 July 31, 1957.
 
 Kelly Brown, Muskogee, Okl., for appellants.
 Alpheus Varner, Poteau, Okl., and G. C. Hardin, Fort Smith, Ark., for appellee.
 Before PHILLIPS, PICKETT and LEWIS, Circuit Judges.
 LEWIS, Circuit Judge.
 
 
 1
 Plaintiff-appellee invoked the diversity jurisdiction of the United States District Court for the Eastern District of Oklahoma by instituting this action to quiet title to certain lands bordering the Arkansas River on the south in LeFlore County, Oklahoma. The subject lands are contiguous to lands admittedly owned by plaintiff but stand unrepresented by record of title except as plaintiff claims by accretion and appellants-defendants assert possessory rights. The defendants do not seek affirmative relief but are aggrieved by the trial court's decree establishing the lands as accreted and quieting title in plaintiff. All parties recognize that the rights of a riparian owner on a navigable stream[1] are governed by the laws of the state in which the stream is situated, Weems Steamboat Co. of Baltimore City v. People's Steamboat Co., 214 U.S. 345, 29 S.Ct. 661, 53 L.Ed. 1024, and that the controlling statute is Title 60 Okl.Stat.Ann. § 335:
 
 
 2
 "Where from natural causes land forms by imperceptible degrees upon the bank of a river or stream, navigable or not navigable, either by accumulation of material or by the recession of the stream, such land belongs to the owner of the bank, subject to any existing right of way over the bank." (emphasis added)
 
 
 3
 Defendants contend the adverbial phrase "from natural causes" should be strictly construed to negative any statutory right to accretion where the exposing of land is hastened or influenced by artificial means. If sec. 335 is properly so construed plaintiff cannot prevail herein as a narration of the facts found by the trial court will indicate.
 
 
 4
 For many years the confines of the Arkansas River have gradually diverted to the north slowly changing the river's course and exposing the subject lands upon the south bank. The progress of the river has been measurable, hastened somewhat by occasional but recurring flood years but without radical or violent change. Eight surveys of the channel and bank taken between 1897 and 1955 indicate a progressive movement to the north which has presently exposed over 300 acres contiguous to the record title lands of plaintiff. The natural movement of the river and the problems occasioned by flood have initiated the construction of controls by the United States Government and others. During 1929 to 1931 a revetment was built co-operatively by the Kansas City Southern Railroad to protect its right of way and the City of Fort Smith to protect its water supply and the State of Oklahoma. No further work was done until 1952 when the United States Government constructed bank stabilization controls. The opinions of expert engineering witnesses were in sharp conflict as to the extent of the effect of the construction work upon the river's course. The trial court found, however, that the river's channel was not changed suddenly by either revetment project although each may have added impetus or direction to the flow. In this regard, from ample evidence, the trial court specifically found:
 
 
 5
 "* * * This revetment work changed, to some extent, the current of the river and may have had some effect in causing the river to recede to the north; however, the changes after the revetment work was done were gradual."
 
 
 6
 No Oklahoma decision has directly determined whether a claimant asserting rights to lands accreting to his existing riparian lands must show the addition to be wholly natural. However, sec. 335 and 336[2] have been held to be declaratory of the common law. Goins v. Merryman, 183 Okl. 155, 80 P.2d 268. And the identical statute contained in the California Civil Code has similarly been interpreted as a codification of the common law. Civil Code, § 1014. Carpenter v. City of Santa Monica, 63 Cal.App.2d 772, 147 P.2d 964. Cases based upon the common law and similar codifications are virtually unanimous in their holdings that a riparian owner is not precluded from acquiring land by accretion where the accumulation is but hastened by artificial constructions lawfully constructed by third parties. See Frank v. Smith, 138 Neb. 382, 293 N.W. 329, 134 A.L.R. 467. Since the additions to plaintiff's riparian lands appeared gradually, were not caused by his own acts and were but hastened by the lawful acts of others we see no fact in the instant case requiring exception to the statement in St. Clair County v. Lovingston, 23 Wall. 46, 23 L.Ed. 59.
 
 
 7
 "In the light of the authorities, alluvion may be defined as an addition to riparian land, gradually and imperceptibly made by the water to which the land is contiguous. It is different from reliction, and is is the opposite of avulsion. The test as to what is gradual and imperceptible in the sense of the rule is, that though the witnesses may see from time to time that progress has been made, they could not perceive it while the process was going on. Whether it is the effect of natural or artificial causes makes no difference. The result as to the ownership in either case is the same. The riparian right to future alluvion is a vested right. It is an inherent and essential attribute of the original property. The title to the increment rests in the law of nature. It is the same with that of the owner of a tree to its fruits, and of the owner of flocks and herds to their natural increase. The right is a natural, not a civil, one * * * The owner takes the chances of injury and of benefit arising from the situation of the property. If there be a gradual loss, he must bear it; if a gradual gain, it is his * * *"
 
 
 8
 We think it clear that the influence of the revetment work of the government and others upon the flow and course of the Arkansas River does not defeat plaintiff's title to the accreted lands. The alluvion was occasioned essentially from natural causes as intended by Oklahoma statute. To interpret sec. 335 to mean "entirely from natural causes" would be unrealistic.
 
 
 9
 Appellants also contend as applicable to this case the rule that lands lost by submersion which subsequently reappear with identifiable boundaries are not accreted lands but belong to the original fee owner. Herron v. Choctaw and Chickasaw Nations, 10 Cir., 228 F.2d 830. There is no merit to such claim under the record facts. Plaintiff traces his record title to its origin in an unallotted land deed executed by the Choctaw and Chickasaw Nations to one Robert A. Welch in 1918. The original government survey in 1897 shows the lands to be riparian and the movement of the river has been consistently and constantly to the north since that survey. There is no competent evidence to warrant the application of the rule of reappearing riparian lands. Although one claiming the right to a decree quieting title must support his claim through the strength of his own title, he has no burden to negative every possibility that might weaken his claim and even if in the unrecorded geological past the Arkansas coursed miles north of its present channel such fact would not be relevant to the present issues. Plaintiff has traced his title from the first settlement of the subject lands. He has sustained his burden.
 
 
 10
 The judgment is affirmed.
 
 
 
 Notes:
 
 
 [1]
 The parties stipulated that the Arkansas River is a navigable stream as it flows through Township 10 North, Range 21 East of the Indian Base and Meridian in LeFlore County, Oklahoma
 
 
 [2]
 60 Okla.Stat.Ann. § 336: "If a river or stream carries away, by sudden violence, a considerable and distinguishable part of a bank, and bears it to the opposite bank, or to another part of the same bank, the owner of the part carried away may reclaim it within a year after the owner of the land to which it has been united takes possession thereof."