730 F.2d 1363
 LEAR PETROLEUM CORPORATION and Texas Oil and Gas
Corporation, Plaintiffs, Appellees, Cross-Appellants,
v.
Ralph WILSON, Neil Wilson and P.H. Hardin, Defendants,
Appellants, Cross-Appellees,
Georgiana Fannin Lillard, Mella Belle Fannin Terrell,
Jessica E. Turner, John L. Belt, First National Bank & Trust
Company of Oklahoma City, Oklahoma, as Trustees of the Roy
J. Turner Marital Trust "A" and "B", The Estate of Faye
Fannin Lee, by serving Nancy Brown, Administrator, Alice
Fannin Daniel, Elizabeth L. Cariker, Tom J. Aishman and
Sharon K. Aishman, Husband and Wife, John Stuart Hunt,
Sherman Hunt, Jr., Gary C. Wilkins, Arvil G. Flippin, Jr.,
and Bandera Exploration Company, Defendants and Additional
Appellees on Cross-Appeal.
 Nos. 82-1837, 82-1900.
 United States Court of Appeals,
Tenth Circuit.
 March 26, 1984.
 
 Betsy Hall of Hardin, Jesson & Dawson, Fort Smith, Ark. (Bruce Green, Muskogee, Okl., on the brief), for defendants, appellants, cross-appellees.
 Herbert M. Graves of Sullivan, Graves, Combs & Densmore, Oklahoma City, Okl., for plaintiffs, appellees, cross-appellants.
 Before SETH, Chief Judge, and DOYLE and LOGAN, Circuit Judges.
 SETH, Chief Judge.
 
 
 1
 This is an interpleader action (28 U.S.C. Sec. 1335) brought by the operators of a gas well in Oklahoma. The petition asserts that there are adverse claims to the royalty. The petitioners describe the various claimants who are some of the original lessors and some overriding royalty owners.
 
 
 2
 The parties who have taken this appeal are lessors of petitioners and are farmers in possession and farming the area in question (Section 36, Township 10 North, Range 26 East, in LeFlore County).
 
 
 3
 The petitioners are also lessees under an oil and gas lease from the Cherokee, Choctaw, and Chickasaw Indian Nations under a lease covering the same land. These lessors were however not named or mentioned in the petition as having any claim nor was this lease referred to in the petition in interpleader. The petitioners were paying a royalty before the suit to the Indian Nation lessors. Royalties were deposited in court during the action.
 
 
 4
 The existence of the Indian Nation lease was however discussed in arguments to the court at the outset and it was introduced in evidence at the end of the trial without reference to any title. The court at the conclusion of the trial dismissed sua sponte the interpleader for the reason that the Indian Nations were indispensable parties not joined. The court observed that they could not be sued without their consent.
 
 
 5
 There was no proof admitted at trial which showed in any way any claim adverse to the title of appellants and, as mentioned, none was alleged in the petition. The only evidence as to the Indian Nations was their lease to petitioners, mentioned above, and the fact that royalties were being paid to them.
 
 
 6
 The appellants put on evidence of their title and chain of title back to a predecessor who held under a 1918 deed to unallotted land from the Choctaw and Chickasaw Indian Nations. This predecessor also had a judgment quieting his title, affirmed in the case of Littlefield v. Nelson, 246 F.2d 956 (10th Cir.1957). The problem arises from the fact that the land in issue adjoins the Arkansas River which has moved over substantial distances through the years. The case is unusual in that this court in Littlefield v. Nelson affirmed a judgment from the Eastern District of Oklahoma which quieted title to this same tract in the predecessor in title to appellants Hardin, as above mentioned.
 
 
 7
 The Supreme Court in Choctaw Nation v. Oklahoma, 397 U.S. 620, 90 S.Ct. 1328, 25 L.Ed.2d 615, considered the initial title of the Nations to the bed of the stream. This decision was on the original title and in no way related to land theretofore conveyed.
 
 
 8
 The Littlefield judgment was not challenged in any way in this action. In Littlefield, the findings related to the movement of the Arkansas River northward and the extension of Section 36 by accretion. The location of the riverbed was then placed at the north edge of Section 36 and apparently not on the section. The proof in the case before us demonstrates that the river and riverbed is some distance north of Section 36 and has been for years. The influence of revetments on the river was considered in Littlefield.
 
 
 9
 The appellants thus presented substantial evidence, not rebutted, to prove their title, and are entitled to prevail in these proceedings on the strength of their title as against all parties to the suit.
 
 
 10
 The trial court had before it all the parties which, according to the petition of interpleader, held claims to the royalties and asserted to be adverse. The proof as to the claims of these parties was clear and we see no reason why the prayer in the interpleader petition should not be disposed of by a judgment. There may be other claims out there which were not asserted by possible claimants not made parties, but this should not prevent the court from dealing with the parties and claims before it. The fact that among these claims may be those which might be asserted by the Indian Nations makes no difference. A judgment can be fashioned as to all and any claimants not before the court.
 
 
 11
 With the dismissal of the interpleader, and the return to petitioners of the royalty funds as ordered by the trial court, the petitioners have been placed in a position to control whether the issue is ever determined. They can continue to pay the Indian Nations as they have been, and they will certainly not object. Also no proceedings can be brought to challenge petitioners' action nor can the Nations be sued. The trial court acknowledges the fact that appellants are thus without a remedy.
 
 
 12
 The fact that the appellants, under the trial court's sua sponte dismissal of the interpleader, are left without any remedy was not given sufficient consideration by the trial court under our prior cases and under Tewa Tesuque v. Morton, 498 F.2d 240 (10th Cir.1974). In Tewa, the issue was the cancellation of a lease between Tesuque Pueblo as lessor and a developer. The action was brought by a group from the Pueblo for damages alleged to have been suffered by cancellation of the lease by the Government. We held that the Pueblo as lessor was an indispensable party and set out the standards or factors in Rule 19(b) of the Federal Rules of Civil Procedure. We there held that the Tewa group had other remedies. A judgment herein need not affect the title or claims of non-parties. It is quite different from the contract cancellation in Tewa. A judgment can be entered which will be adequate under Rule 19(b). We have in several cases set forth the test to be applied under Rule 19(b). These include Francis Oil & Gas, Inc. v. Exxon Corp., 661 F.2d 873 (10th Cir.1981); Manygoats v. Kleppe, 558 F.2d 556 (10th Cir.1977); Thomas v. Colorado Trust Deed Funds, Inc., 366 F.2d 140 (10th Cir.1966).
 
 
 13
 The judgment of the trial court is set aside and the case is remanded for further proceedings.
 
 
 14
 IT IS SO ORDERED.
 
 WILLIAM E. DOYLE, Circuit Judge, dissenting:
 
 15
 This cause was filed as an interpleader action. The appellees filed a suit in an effort to determine the rightful owner of royalties due from a producing gas well. The possible owners of the royalties and lands at issue included appellants. They were named as parties and filed a counterclaim seeking a removal of any cloud on their title. Also, three Indian Nations were possible owners. Nevertheless, they were not named as parties and did not appear. On its own motion the trial court dismissed the action; but it first found that the Indian Nations were indispensable parties who could not be brought into the action because of their sovereign character.
 
 
 16
 The majority opinion proposes to reverse the trial court and to allow the action to proceed without the Indian Nations. The reasons for this proposed action are as follows:
 
 
 17
 1. The lack of proof at trial showing any claim which would be adverse to the claim of the appellants. The appellants had proof of their title and chain of title to the land at issue. This includes the fact that appellants' predecessor in interest had a judgment quieting his title. Littlefield v. Nelson, 246 F.2d 956.
 
 
 18
 2. There was no evidence whatsoever of the claim of the Indian Nations to the land except their lease to appellees. In addition, although the Supreme Court has considered the Indian Nations' title to the bed of a stream which adjoins the land at issue, this decision only dealt with their initial title and not any subsequent conveyances. Choctaw Nation v. Oklahoma, 397 U.S. 620, 90 S.Ct. 1328, 25 L.Ed.2d 615.
 
 
 19
 3. Although there may be other claims to the land, a judgment can be fashioned which will not effect any claimants before the court.
 
 
 20
 4. If the interpleader action is dismissed, the appellants are without a remedy.
 
 
 21
 The problem which arises from the majority approach is that in deciding the case in this manner, the implicit result is that the appellants, rather than the Indian Nations, have full and complete title to the land. Furthermore, the majority does not explain how a remedy can be fashioned without effecting the rights of the Indian Nations. Presumably, if the Indian Nations gave a lease to appellees for the land, they must believe that they have some right to it. Moreover, it is impossible to see how the trial court is able to decide who should get the royalties without determining who owns the land. Thus, the Indian tribes may end up without either ownership or rights to royalties.
 
 
 22
 The majority opinion takes the position that a dismissal leaves the appellants without a remedy, and this must be balanced against the Indian Nations' sovereign immunity. It is impossible to determine why the appellants' need for a remedy should outweigh any rights the tribes may have.
 
 
 23
 For the above reasons, I respectfully dissent. I would affirm the judgment of the district court which dismissed the action.