853 F.2d 140
 6 UCC Rep.Serv.2d 593
 AVANT PETROLEUM, INC. and Mitsui & Co. (U.S.A.), Inc., Plaintiffs,
v.
BANQUE PARIBAS, BP North America Petroleum Inc., and Crysen
Trading and Marketing, Inc., Defendants,
Banque Paribas, Defendant-Appellee,
BP North America Petroleum Inc., Defendant-Appellant.
 No. 511, Docket 87-7786.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 22, 1988.
Decided Aug. 4, 1988.
 
 Irwin H. Warren, New York City (Bruce R. Zirinsky, Jacqueline Marcus, Jonathan S. Greenberg, Weil, Gotshal & Manges, New York City, on the brief), for defendant-appellee.
 James H. Carter, New York City (Jonathan S. Geldzahler, Bonna L. Horovitz, Sullivan & Cromwell, New York City, on the brief), for defendant-appellant.
 Before TIMBERS, KEARSE and PIERCE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 In this interpleader action pursuant to 28 U.S.C. Secs. 1335 and 2361 (1982), defendant BP North America Petroleum Inc. ("BP") appeals from so much of a final judgment of the United States District Court for the Southern District of New York, Edward Weinfeld, Judge, as awarded $6,300,000 of the interpleader fund to defendant Banque Paribas ("Paribas") instead of to BP 652 F.Supp. 542. The court recognized Paribas's claim on the basis of a security interest perfected by Paribas pursuant to the Uniform Commercial Code ("U.C.C.") prior to the filing of the interpleader action and prior to BP's acquisition of its lien on the property. BP contends that the court should have awarded the $6,300,000 to BP because Paribas allowed its U.C.C. filing statements to lapse during the pendency of the interpleader action, thereby subordinating Paribas's interest to that of BP. For the reasons below, we affirm.
 
 I. BACKGROUND
 
 2
 The facts are not in dispute. In May 1986, interpleader plaintiff Avant Petroleum, Inc. ("Avant"), owed debts totaling some $16,000,000 to Crysen Trading and Marketing, Inc. ("Crysen"), for petroleum purchases. At that time, both Paribas and BP had claims against Crysen's assets.
 
 
 3
 On July 31, 1981, Crysen had entered into an agreement giving Paribas a general security interest in all Crysen assets, including accounts receivable. Paribas perfected its security interest in accordance with applicable state law by filing U.C.C. financing statements in New York on August 10, 1981, Texas on August 11, 1981, and California on September 4, 1981. Under U.C.C. Sec. 9-403(2), each filing was effective for five years.
 
 
 4
 In April 1986, BP instituted a breach of contract action against Crysen in Texas state court and obtained an order for a writ of garnishment providing, inter alia,
 
 
 5
 that the maximum value of property or indebtedness that may be garnished is $5,560,000.00. Further, the writ shall command the Garnishee [Avant] NOT to pay Crysen any debt or to deliver any effects to it, pending further order of this Court.
 
 
 6
 The writ was served on Avant on or about April 23, 1986.
 
 
 7
 On May 16 and May 20, 1986, Avant commenced interpleader actions in the Southern District of New York, asking the court to resolve the competing claims of Paribas, BP, and Crysen to debts of $13,385,925.76 and $2,763,816, respectively, that Avant owed Crysen. The court ordered that the funds be deposited into the registry of the court, and the two actions were consolidated.
 
 
 8
 In July 1986, all parties stipulated that $6,300,000 would suffice to satisfy BP's claim, including interest, and that the remainder of the interpleader fund should be paid to Paribas. Their stipulation was approved by the court on July 8, 1986, and the bulk of the interpleader fund was therefore released to Paribas. This left for adjudication only the competing claims of Paribas and BP to the remaining $6,300,000.
 
 
 9
 In August and September 1986, while the interpleader action was pending, Paribas's five-year U.C.C. financing statements, filed in 1981, lapsed. Paribas neglected to file new financing statements until November 1986. After the new filings, BP moved for summary judgment in its favor. Though conceding that at the time the interpleader actions were commenced in May 1986 Paribas's perfected security interest was superior to BP's judicially created lien, BP contended that under the so-called "retroactive unperfection" provision in U.C.C. Sec. 9-403(2), the filing lapses had caused Paribas's interest to become subordinate to BP's lien. Paribas cross-moved for summary judgment in its favor, contending that the unperfection provision was irrelevant and that its claims had priority.
 
 
 10
 In an opinion dated January 28, 1987, Judge Weinfeld granted Paribas's motion. Noting that the issue appeared to be one of first impression, he held that, given "the nature of the deposit of an interpleader stake into the Registry of the Court, the point at which the rights to the stake were asserted, equitable considerations, and the policy behind the U.C.C. provisions," 652 F.Supp. at 548, an award to BP based on a ruling of retroactive unperfection of Paribas's security interest "would be clearly inequitable," id. at 546. The court concluded that since Paribas had a valid, superior interest in the funds when the interpleader action was initiated and the funds were deposited with the district court, Paribas was the rightful owner of the funds. The court observed also that the parties' answers filed with the court put each other and the public on notice of their claims, and that the court was "openly in possession and control of the funds for the express purpose of determining which party was the rightful owner." Id. at 547. Accordingly, it concluded that application of the unperfection provisions would not further the policies underlying U.C.C. Article 9.
 
 
 11
 Judgment was entered awarding the $6,300,000 to Paribas, and this appeal followed.
 
 II. DISCUSSION
 
 12
 This case presents a question of first impression, the answer to which is not clearly provided by either the U.C.C. or the interpleader statute. For the reasons below, we conclude that in the circumstances of this case, the court did not err in focusing on the time at which the funds were deposited with the court and determining the relative rights of the parties as of that time.
 
 
 13
 A. U.C.C. Article 9's Recording and Priority Provisions
 
 
 14
 Article 9 of the U.C.C. provides a scheme for prioritizing the claims of secured creditors and lien holders to collateral, setting forth the means by which various types of security interests may be perfected, the priorities among interests of the same type or of various types, and ways in which those priorities may be altered. The parties are in agreement that the pertinent U.C.C. provisions in New York, California, and Texas are substantially the same.
 
 
 15
 Under Secs. 9-106, 9-302, and 9-306, a security interest in an account receivable or in the proceeds of an account receivable, such as Paribas's interest in Avant's debt to Crysen, may be perfected only through the filing of a financing statement. The purpose of the filing requirement is to provide a method by which prospective creditors may learn that a debtor's property is encumbered and to provide binding constructive notice of the encumbrance. See, e.g., In re McBee, 714 F.2d 1316, 1321 (5th Cir.1983); see generally 9 R. Anderson, Uniform Commercial Code Sec. 9-402:6 (1985); J. White & R. Summers, Uniform Commercial Code Sec. 23-5 (2d ed. 1980).
 
 
 16
 A "lien creditor" is a creditor, such as BP, who has acquired a lien on the subject property by a process such as attachment. U.C.C. Sec. 9-301(3). A perfected security interest is superior to a later acquired lien. U.C.C. Sec. 9-301(4). However, under U.C.C. Sec. 9-301(1)(b), a lien creditor is entitled to priority over a creditor whose security interest has not been perfected, regardless of whether the lien holder has knowledge of the unperfected security interest.
 
 
 17
 U.C.C. Sec. 9-403(2) provides that a filed financing statement is effective for five years. Unless a continuation statement is filed prior to the end of that period, the security interest becomes unperfected after five years and becomes subordinated to a theretofore junior lien:
 
 
 18
 [A] filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five year period unless a continuation statement is filed prior to the lapse.... Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.
 
 
 19
 U.C.C. Sec. 9-403(2). The principal impetus for Sec. 9-403(2)'s retroactive unperfection provision appears to have been prevention of a circular situation that could result if the security interest of a creditor whose filing statement lapsed were allowed to remain superior to the interest of a previously subordinate lien holder whose lien was acquired prior to the lapse, and a third creditor then entered the picture: If A had a perfected security interest at the time B became a lien creditor, making the interest of A superior to that of B, and if the interest of A became unperfected and thereafter C became a lien creditor, if there were no change in the order of priorities as a result of the lapse, B 's interest would be superior to that of C, and C 's interest would be superior to that of A, but A 's interest would remain superior to that of B. The provision that the lapse makes A 's interest subordinate to that of B avoids the potential circularity.
 
 
 20
 There was, of course, no potential problem of circularity here, for only two creditors, Paribas and BP, appeared as claimants to the Crysen funds held by Avant.
 
 B. The Nature of Interpleader Proceedings
 
 21
 To the extent pertinent here, Sec. 1335 of 28 U.S.C. allows a stakeholder to institute an interpleader action by depositing money or property worth $500 or more into the registry of the court if there are two or more "adverse claimants" who "are claiming or may claim to be entitled to such money or property." Once the interpleader fund has been deposited with the district court, the court holds it for whichever party it determines is the rightful owner. Cf. Mid-Jersey National Bank v. Fidelity-Mortgage Investors, 518 F.2d 640, 643-44 (3d Cir.1975) (property deposited with court is analogous to res of trust; court acts as trustee with the duty to determine beneficiary).
 
 
 22
 The court will normally adjudicate the rights of the claimants as of the time the interpleader fund is deposited with the court. Cf. Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, 661 (2d Cir.1940) (liens valid at the time of commencement of bankruptcy proceedings do not lose their validity during the course of the proceedings). A claim not existing at the time the fund was created thus could not take precedence over preexisting claims, except to the extent that the debtor would retain an interest in the fund over and above the total meritorious claims of the interpleader defendants. Cf. Clarkson Co. v. Shaheen, 716 F.2d 126, 129 (2d Cir.1983) (once property came into the custody of the court for the plaintiff's benefit, "no subsequent activity could give third parties a superior claim").
 
 
 23
 BP argues that the interpleader court does not necessarily focus on the rights of the claimants as of the time the fund is created, contending that those rights remain fluid during the course of the proceeding and that the court may focus on some later time. This argument is based on Sec. 1335's description of claimants as persons who "are claiming or may claim " (emphasis added). BP's reliance is misplaced. An interpleader action is normally conducted in two stages, the first to determine whether the stakeholder is entitled to bring an interpleader action, and the second to determine the rights of the competing claimants to the fund. See New York Life Insurance Co. v. Connecticut Development Authority, 700 F.2d 91, 95 (2d Cir.1983); 3A J. Moore & J. Lucas, Moore's Federal Practice p 22.14 (2d ed. 1987). The inclusion in Sec. 1335 of the phrase "or may claim" is directed to the first stage of the proceeding and is designed to allow the stakeholder to invoke the interpleader form of action against a person who has not yet actually asserted his claim or whose claim has not been liquidated. See generally id. p 22.08, at 20-60 to 20-62; 7 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure Sec. 1707, at 523 (2d ed. 1986) (fact that claims are not liquidated is not relevant "to a determination of the initial question whether interpleader should be granted"). Once the interpleader form has been approved, however, the court proceeds to adjudicate the claims before it just as it would in any other civil action. The fact that "[t]here may be other claims out there which were not asserted by possible claimants not made parties ... should not prevent the court from dealing with the parties and claims before it." Lear Petroleum Corp. v. Wilson, 730 F.2d 1363, 1364 (10th Cir.1984). The issues are defined by the pleadings of the parties before the court and, in the absence of special circumstances, the court normally determines the rights of the parties on the basis of the facts as they existed at the time the action was commenced. But see Fed.R.Civ.P. 15(d) (court has discretion to permit filing of supplemental pleading alleging subsequent events where such filing would be just and would not unduly prejudice the opposing party).
 
 
 24
 We conclude that where an interpleader action is brought to have the court determine which of two parties has priority with respect to the interpleader fund, the court should normally determine priority as of the time the fund was created.
 
 
 25
 C. The Interplay Between U.C.C. Unperfection and Interpleader
 
 
 26
 The question remains whether the U.C.C.'s retroactive unperfection provision should be deemed to alter the court's normal focus on the parties' rights as of the time the property was deposited with the court. U.C.C. Article 9 contains no provision with respect to interpleader actions. Paribas argues that the court's acceptance of the property in the interpleader fund constitutes all the notice to which any potential creditor is entitled and makes further compliance with U.C.C. refiling provisions irrelevant and unnecessary. BP urges us to reject that argument because U.C.C. requirements are not based on actual notice or knowledge, and because carving an exception for interpleader actions out of the retroactive unperfection provision is contraindicated by the fact that Sec. 9-403(2) already contains an exception for one class of judicial proceedings--those relating to insolvency--and not for interpleader. While the question is close, we conclude that the better view is that once an interpleader action is commenced and the property has been deposited with the court, continuation filings are not required, and it remains appropriate for the court to determine the relative priorities of the claimants as of the time the interpleader fund was deposited with the court.
 
 
 27
 Section 9-403(2), in addition to providing that the effective period of a filed financing statement is five years and that the effectiveness lapses at the end of that period unless a continuation statement is filed prior to the end of the period, provides as follows:
 
 
 28
 If a security interest perfected by filing exists at the time insolvency proceedings are commenced by or against the debtor, the security interest remains perfected until termination of the insolvency proceedings and thereafter for a period of sixty days or until expiration of the five year period, whichever occurs later.
 
 
 29
 The insolvency exception was added to Sec. 9-403(2) in 1972 in response to a lack of uniformity in the judicial treatment of filing lapses during bankruptcy proceedings. Compare Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658, with Benedict v. Zutes, 88 Misc. 214, 150 N.Y.S. 147 (Sup.Ct.Monroe Co.1914). The official explanation for the change stated that, "[w]hile the prevailing line of decisions is to the effect that the situation is frozen at the moment of bankruptcy without an obligation to refile, there are contrary decisions, and this situation might prove an inadvertent trap to a secured party who failed to refile or file a continuation statement during a bankruptcy." U.C.C. Sec. 9-403(2) official reasons for change (1972); see also 48 A.L.I. Proceedings 361 (1971) (Judge Braucher endorsing the attempt "to avoid a question which has sometimes arisen," on which "the cases go both ways.").
 
 
 30
 While the inclusion of an exception for one class of proceedings, together with silence as to other classes, may at times support an inference that the drafters intended to create no exception other than the one noted, we are skeptical of such an inference here. The drafters faced what BP itself describes as "a tangle of historic precedents concerning filing lapses during bankruptcy proceedings." But as to interpleader, not only was there no such "tangle" to attract the drafters' attention, we know of no case at all prior to this one involving the lapse of a filing during an interpleader proceeding.
 
 
 31
 The rationale for eliminating the requirement for filing continuation statements during insolvency proceedings is that such a filing is not needed to protect potential creditors when the funds have been placed openly in the possession and control of the court. Thus, nearly a half century ago, this Court noted that perfection by refiling during a bankruptcy proceeding, given the bankruptcy trustee's open and notorious possession, would have "no more than a ceremonial effect." Lockhart v. Garden City Bank & Trust Co., 116 F.2d at 662; accord In re Lake County Fuel & Supply Co., 70 F.2d 391 (7th Cir.), cert. denied, 293 U.S. 577 (1934); see also In re Chaseley's Foods, Inc., 726 F.2d 303, 308-09 (7th Cir.1983).
 
 
 32
 The same rationale is applicable to the present interpleader action. As the district court stated, "certainly the purpose of requiring the filing of a continuation statement would not be served with regard to existing creditors who already had notice of the creditor's perfected security interest and knowledge of the interpleader actions themselves on the date the interpleader actions were filed." 652 F.Supp. at 547-48. Since we see no evidence in the U.C.C. drafts, comments, or record of proceedings to indicate that the drafters gave any thought to interpleader proceedings, we are not persuaded that the retroactive unperfection provision in Sec. 9-403(2) was intended to require the holder of the secured interest to make continuation filings after the property has been deposited into the custody of the court.
 
 
 33
 On the facts of this case, in which BP, the only claimant to the funds other than Paribas, concedes that Paribas's claim was superior to that of BP when the proceeding was initiated and the moneys were deposited with the court, we conclude that Paribas's failure thereafter to file continuation statements was not material. As Judge Weinfeld stated below,
 
 
 34
 Paribas was only prevented from taking action to obtain possession of the funds at that time because the Court had acquired custody of them pending determination of the rights of the respective claimants. The Court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them....
 
 
 35
 To allow the subsequent lapse of its perfections, due to its failure to file continuation statements, to divest Paribas of its superior interest in the funds would be to penalize it for the delay in collection that was forced on it by the initiation of a court proceeding. This would create the bizarre result that the very act of setting up the "trust" in order to protect and preserve property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights to the property. Such an outcome is not only inequitable, but it is also inconsistent with the notion that the funds are held by the Court pending determination of the rightful owner at the time of the interpleader.
 
 
 36
 In a sense, it might be said that Paribas required no further security interest or perfection because it had already asserted its interest in the funds at a time when its interest was valid and controlling.
 
 
 37
 652 F.Supp. at 547. We have considered all of BP's arguments on appeal, and we conclude that the district court did not err in awarding the disputed portion of the fund to Paribas.
 
 CONCLUSION
 
 38
 The judgment of the district court awarding the remaining $6,300,000 to Paribas is affirmed.