United States Court of Appeals,

Fifth Circuit.

No. 93-2041.

Charles W. WHITE, et al., Plaintiffs,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, As Receiver for Texas American Bank-Galleria, et al., Defendants.

FEDERAL DEPOSIT INSURANCE CORPORATION, As Successor in Interest to NCNB Texas National Bank, Defendant-Appellee,

v.

Toni Y. KOZAK, Trustee of Black Family Trust, Howard R. Block, Porter & Clements and John E. O'Neill, Intervenors-Appellants.

April 27, 1994.

Appeal from the United States District Court for the Southern District of Texas.

Before DUHÉ, and EMILIO M. GARZA, Circuit Judges and STAGG,[1] District Judge.

STAGG, District Judge:

Intervenors-Appellants, Toni Y. Kozak, Howard R. Block, Porter & Clements and John E. O'Neill (the "Appellants"), appeal from a summary judgment rendered in favor of Defendant-Appellee, the FDIC. Finding that the district court erred in granting summary judgment, we reverse.

I.

FACTS AND PROCEEDINGS

This matter comes to the court for the second time. An earlier panel reversed summary judgment in favor of NCNB Texas

---

[1]District Judge of the Western District of Louisiana, sitting by designation.

National Bank (NCNB) on the ground that the Appellants had not been given an opportunity to present their respective oppositions to NCNB's motion for summary judgment.[2] To the factual summary contained in this earlier decision—which we will not repeat here—we add the following.

While this matter was pending on appeal for the first time, NCNB transferred to the FDIC, *inter alia,* all of its interests in this matter. On remand, therefore, the district court ordered that the FDIC, in its corporate capacity, be substituted as a party defendant for NCNB. The appellants filed briefs in opposition to the FDIC's motion for summary judgment (formerly NCNB's motion for summary judgment), as well as cross motions for summary judgment. After exhaustive briefing by all parties, the district court granted summary judgment in favor of the FDIC. The Appellants timely appealed the final judgment.

## II.

### ANALYSIS

As noted by the earlier panel, the FDIC (as successor in interest to NCNB) is either an unsecured judgment creditor or a lien creditor of White, and the Appellants have either valid assignments of, or merely unperfected security interests in, White's share of the proceeds of the Southwest note.[3] The district court found that the documents relied upon by the Appellants did

---

[2]*See White v. Texas American Bank/Galleria,* 958 F.2d 80 (5th Cir.1992).

[3]*Id.* at 85 n. 17.

2

not create valid assignments under Texas law, but that the documents were sufficient to create unperfected security interests on behalf of the Appellants in White's portion of the Southwest note. The district court also concluded that the FDIC was a lien creditor of White because the actions of NCNB subsequent to the initiation of the interpleader action were of sufficient quality and quantity to create a lien on the proceeds of the Southwest note. Under Texas law, an unperfected security interest is subordinate to the rights of a lien creditor.[4]

Appellants argue that the district court erred in concluding that the FDIC was a lien creditor. Alternatively, the Appellants argue that the documents executed by White were sufficient to constitute an assignment under Texas law. The district court's conclusion that the FDIC's claim is superior to that of the Appellants is premised upon the court's implicit assumption that activity subsequent to the time that the interpleader fund has been deposited into the registry of the district court can affect the

---

[4]Tex.Bus. & Com.Code § 9.301. In relevant part the statute provides:

> (a) Except as otherwise provided in Subsection (b), an unperfected security interest is subordinate to the rights of
>
> > (2) a person who becomes a lien creditor before the security interest is perfected;
>
> (c) A "lien creditor" means a creditor who has acquired a lien on the property by attachment, levy or the like and includes an assignee for benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment.

3

relative rights of the potential claimants to that fund. Finding that the rights of claimants to an interpleader fund should normally be determined as of the time that the fund was created, this court does not reach the issue of whether the actions of NCNB were sufficient to create a lien under Texas law. Further, we need not address Appellants' assertion that they were assigned White's interests in the note proceeds.

In this case, Southwest Airlines filed a counter-claim and a cross-claim in interpleader and deposited the 1989 and 1990 installments on the note into the registry of the district court because there was a genuine dispute among a number of parties as to who was entitled to the funds. Southwest filed its original claims in interpleader on September 22, 1989, and deposited the 1989 note installment on September 25, 1989. In September of 1990, Southwest amended its claims in interpleader and deposited the 1990 note installment into the court's registry. NCNB, and thus the FDIC, became a judgment creditor of White in December of 1989.[5] Subsequently, NCNB moved for a writ of garnishment against the interpleader fund. In January of 1990, the district court denied this motion. In May of 1990, NCNB moved for a charging order, which was also denied by the district court. NCNB never sought a writ of garnishment against Southwest Airlines.

---

[5] Under Texas law, no lien is created by the mere rendition of a judgment. *Citicorp Real Estate, Inc. v. Banque Arabe Internationale D'Investissement,* 747 S.W.2d 926, 929 (Tex.Ct.App.1988) (citing *Burton Lingo Co. v. Warren,* 45 S.W.2d 750, 751-52 (Tex.Civ.App.—Eastland 1931, writ ref'd)).

4

Interpleader is a procedural device which entitles a person holding money or property, concededly belonging at least in part to another, to join in a single suit two or more persons asserting mutually exclusive claims to the fund.[6] The issue presented by this case—which is one of first impression in this circuit—is whether activity subsequent to the initiation of an interpleader action can give one claimant a right to the interpleader fund which is superior to that which he had at the time the interpleader was initiated. Today, we join with our brethren of the Second Circuit to hold that activity subsequent to the initiation of an interpleader action is normally immaterial in determining which claimant has a superior right to the interpleader fund.

In *Avant Petroleum, Inc. v. Bangue Paribas,*[7] Crysen Trading and Marketing, Inc. ("Crysen") gave Banque Paribas ("Paribas") a general security interest in all Crysen assets, including its accounts receivable. Paribas perfected its security interest by filing U.C.C. financing statements, which were effective for five years. Approximately four and one-half years later, BP North America Petroleum Inc. ("BP") instituted suit against Crysen and obtained an order for a writ of garnishment against Avant Petroleum, Inc. ("Avant"). At the time, Avant owed Crysen approximately $16,000,000. The writ provided, *inter alia,* that

---

[6] *Gaines v. Sunray Oil Co.,* 539 F.2d 1136, 1141 (8th Cir.1976); *U.S. v. Estate of Swan,* 441 F.2d 1082, 1085 (5th Cir.1971); *Wittry v. Northwestern Mutual Life Ins. Co.,* 727 F.Supp. 498, 499 (D.Minn.1989); and 3A *Moore's Federal Practice* ¶ 22.02[1] (1993).

[7] 853 F.2d 140 (2nd Cir.1988).

Avant, the garnishee, was not to pay any of its debts to Crysen pending further orders of the court. Avant then filed an interpleader action, asking that the court resolve the competing claims of Paribas, BP and Crysen.

While the interpleader action was pending, the five year U.C.C. financing statements filed by Paribas lapsed, and Paribas failed to file new financing statements for two months. BP moved for summary judgment, arguing that the filing lapses had caused Paribas's security interest to become subordinate to BP's judicially created lien. Paribas filed a cross-motion for summary judgment, which the district court granted. On appeal, the judgment was affirmed.

The *Avant Petroleum* court held that the retroactive unperfection of a security interest which takes place subsequent to the date that the interpleader action was initiated and the funds were deposited does not divest the secured creditor of his superior interest in the funds. In so holding, the court concluded "that where an interpleader action is brought to have the court determine which of two parties has priority with respect to the interpleader fund, the court should normally determine priority as of the time the fund was created."[8] In *Avant Petroleum,* the issue before the court was whether the failure of a secured creditor to file continuation statements after the initiation of the interpleader action would result in the subordination of his interests to those of a lien creditor, whose rights were indisputably inferior to

_____

[8]*Id.* at 144.

6

those of the secured creditor at the time the interpleader action was initiated. In the instant case, the issue is whether the affirmative actions of an unsecured judgment creditor after the initiation of the interpleader action can give the judgment creditor a claim superior to that of a secured creditor, whose rights were indisputably superior to those of the judgment creditor when the interpleader action was initiated. Although *Avant Petroleum* is factually distinguishable from the present case, the *ratio legis* of that case is clearly applicable.

Once money is deposited into the court's registry, the money is held by the court pending a determination of which party's claim is superior. In other words, "[t]he court can be said to have taken custody of the money for the benefit of the rightful owner, creating a trust for the purpose of preserving the funds and thereby securing the rightful owner's claim to them."[9] Further, while the money remains in the custody of the court, a secured creditor is prevented from taking any action to enforce his claim. If we were to allow one claimant to obtain an advantage over the others while the interpleader action is pending, we "would create the bizarre result that the very act of setting up the "trust' in order to protect and preserve the property for the benefit of its rightful owner would be the indirect cause of that rightful owner losing its rights in the property."[10]

---

[9] *Id.* at 145 (quoting *Avant Petroleum, Inc. v. Banque Paribas,* 652 F.Supp. 542, 547 (S.D.N.Y.1987)).

[10] *Avant Petroleum,* 853 F.2d at 145 (quoting *Avant Petroleum,* 652 F.Supp. at 547).

In the instant case, NCNB (now the FDIC) sought a writ of garnishment against the interpleader funds. Garnishment is a statutory proceeding brought by a creditor (the garnishor) of a person (the debtor) against a third party in order to satisfy a debt owed to the garnishor.[11] NCNB, the garnishor, moved for a writ of garnishment against the district court (the garnishee) in order to obtain property of White (the debtor), which had come into the custody of the court. The reason for the filing of the interpleader action, however, was that the stakeholder was unable to determine which of the claimants was rightfully entitled to the fund. Thus, any attempt to garnish property which is the subject of an action in interpleader begs the question which is the reason for the interpleader action—that is, which claimant is rightfully entitled to the fund.

This is not to say that one can never garnish funds which are the subject of an interpleader action.[12] But only that interest which the debtor retains in the interpleader fund, as of the date of the initiation of the interpleader action, may be the subject of

---

[11] *Millard v. U.S.*, 916 F.2d 1, 3 (Fed.Cir.1990) (citing *Harris v. Balk*, 198 U.S. 215, 226, 25 S.Ct. 625, 628, 49 L.Ed. 1023 (1905)); and *In re Olivas*, 129 B.R. 122, 124 (W.D.Tex.1991).

[12] "Any attempt to attach funds deposited in the registry of a federal district court is subject to the doctrine of *custodia legis*." *U.S. v. Rubenstein*, 971 F.2d 288, 294 (9th Cir.1992); *see also U.S. v. Van Cauwenberghe*, 934 F.2d 1048, 1062 (9th Cir.1991). "[U]nder the doctrine of *custodia legis*, funds deposited in the registries of federal courts may not be attached "except by order of the judge or judges of said courts.' " *Van Cauwenberghe*, 934 F.2d at 1062 (quoting *The Lottawanna*, 87 U.S. (20 Wall.) 201, 225, 22 L.Ed. 259 (1874).

8

the writ of garnishment.  In the present case, any interest which White had in the interpleader funds as of the date of the initiation of the interpleader action was subject to the security interests of the Appellants.  Likewise, any lien[13] which may have been created after the initiation of the interpleader action would be inferior to the claims which existed as of the date of the action.  An objective of the interpleader action, like that of any civil action, is to determine the respective and relative rights of the parties asserting claims as of the date of the action was commenced.  Allowing one party to enhance his claim while the other claimants patiently await a determination from the court would be inequitable, as well as inconsistent with this objective.

In sum, when an action in interpleader is brought, the court should, absent extraordinary circumstances, determine the relative priorities of all claimants as of the time that the interpleader was initiated.  NCNB, the FDIC's predecessor in interest, was not a lien creditor of White as of the date of Southwest's original interpleader action.  Thus, any claim that the FDIC may have *as a lien creditor* of White can not be asserted against the interpleader fund.  At the time that the interpleader action was initiated, NCNB (now the FDIC) was merely a judgment creditor.  Thus, any claim that the FDIC has against the interpleader fund must be evaluated

---

[13] Although the earlier panel did not the reach the merits of whether NCNB was in fact a lien creditor, it noted that the record would have had to have been "augmented significantly to sustain [such] a judicial determination...."  *White,* 958 F.2d at 85 n. 17.  While we too do not reach the merits of this issue, we concur in the earlier panel's observation.

in accordance with its status as an unsecured judgment creditor.

III.

CONCLUSION

For the foregoing reasons, the judgment of the district court is REVERSED, and we REMAND this case to the district court for proceedings consistent with the terms of this ruling.

\* \* \* \* \* \*

\* \* \* \* \* \*

10