TEXACO, INC., Plaintiff,

and

Hatch & Parent, Intervenor,

and

Imar Arabians, Inc., Intervenor–
Appellant,

v.

William R. PONSOLDT; Jerry D. Vanier;
Laurence D. Strick; National Trust and
Guarantee Co., Ltd., Defendants–Appel-
lees.

No. 94–55542.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 6, 1997.

Decided July 8, 1997.

need not reach the issue of whether Barge 538
was a vessel in navigation. Thus, we express no
opinion on this issue.

T. Randolph Catanese, Westlake Village, CA, for appellant Imar Arabians.

Mary Ellen Baldridge, Coskey & Baldridge, Los Angeles, CA, for appellee Vanier.

Before: HUG, Chief Judge, FERNANDEZ and RYMER, Circuit Judges.

FERNANDEZ, Circuit Judge:

William R. Ponsoldt and Texaco, Inc. were adversaries in two cases in the district court. Texaco and Ponsoldt reached a settlement in those cases; Texaco agreed to pay $500,000 to Ponsoldt. However, just before the scheduled settlement hearing, Jerry Vanier, a creditor of Ponsoldt, gave Texaco notices of garnishment of the settlement proceeds. Texaco also received other notices of claims against the settlement proceeds. On the district court's advice and before the underlying cases were dismissed, Texaco filed an interpleader action and deposited $500,000 with the district court. After the interpleader action was filed, both Vanier and another creditor, Imar Arabians (IA), filed liens against the settlement fund. Vanier filed first, in the underlying district court actions. Shortly thereafter, the court approved the settlement in the underlying cases and dismissed them. Then, many months later, IA filed its lien in the interpleader action. The district court ruled that Vanier's lien had priority, because it was filed first, even though it was not filed in the interpleader action. We affirm.

## BACKGROUND

Apparently, Ponsoldt had several creditors at the time he reached the $500,000 settlement with Texaco in the two underlying lawsuits. Those suits were numbered 88–3072–CBM and 89–0744–CBM. At the time of settlement, those cases had been assigned to District Judge Stephen V. Wilson. Judge Wilson set a hearing for June 1, 1993, in order to finalize the settlement of the cases.

On June 1, 1993, before the hearing, Vanier served Texaco with notices of garnishment of the settlement, including orders of garnishment from a Kansas court and a Florida court, based on a Kansas judgment Vanier had against Ponsoldt. Also on June 1, 1993, Texaco knew that attorney Laurence Strick had an attorney's lien against the settlement for approximately $75,000 and that Ponsoldt's assignee was demanding the proceeds of the settlement. At the June 1, 1993 hearing, Judge Wilson "invited a separate action [the interpleader] on which to deal with the remaining issues" of entitlement to the settlement proceeds. The district court did not close or otherwise dispose of cases 88–3072 or 89–0744 at the hearing, and did not order that the cases were settled on that date.

On June 3, 1993, Texaco filed an interpleader action, case No. 93–3228–CBM. Texaco placed $500,000 into the court's registry and named Vanier, Strick, Ponsoldt, and Ponsoldt's assignee as defendants. Also on June 3, 1993, Vanier obtained a judgment against Ponsoldt in California based on the Kansas judgment. On June 4, 1993, Vanier filed a judgment creditor's lien in cases 88–3072 and 89–0744, based on his June 3, 1993 judgment. That lien was for approximately $474,900.

On June 7, 1993, Judge Wilson held a hearing in cases 88–3072 and 89–0744. He noted that those cases should be deemed settled and stated that the interpleader case should be transferred to his docket. On June 8, 1993, the district court approved the settlement in cases 88–3072 and 89–0744. Eventually, the interpleader case was transferred to Judge Wilson.

IA did not obtain a California judgment against Ponsoldt until June 11, 1993. On July 29, 1993, IA moved to intervene in the interpleader action as another Ponsoldt creditor, but still did not file a lien. IA was granted leave to intervene, and IA filed a judgment creditor's lien for approximately

$200,700 in case 93–3228, the interpleader case, on November 4, 1993.

Shortly thereafter, Vanier moved for summary judgment, arguing that his lien was prior in time to IA's lien and therefore had priority. IA made a cross-motion for summary judgment, arguing that its November, 1993 lien had priority because it was the first lien filed in case 93–3228. The district court held a hearing on the motions for summary judgment and rejected IA's claim that the first lien filed in an interpleader action has priority. Judge Wilson explained:

I deem Vanier's claim in that lawsuit [88–3072] to be a claim for the money. In effect, [88–]3072 could have served as the vehicle for the interpleader action and it was merely mechanical that I invited a separate action on which to deal with the remaining issues.

But the issues that are now before me in 93–03228 really are the same as those in the 88–3072 case and Vanier was first to file and make their claim there. And it seems to me to be insignificant that Imar Arabian filed first in this 93–03228 action which really is an appendage or extent of the earlier case and was only set up for, as I said, a convenient means of resolving the issues which were alive and litigated in the 3072 case and in which Vanier made the claim first.

So, I think Vanier is first and that means that Imar Arabians gets nothing.

The court entered judgment for Strick for $75,000 plus interest and for Vanier for $425,000 plus interest. IA appealed, and we affirm but on different grounds.

### JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to 28 U.S.C. § 1332; we have jurisdiction pursuant to 28 U.S.C. § 1291.

We review a district court's grant of summary judgment de novo and by using the same standard employed by the district court. We must determine "whether there are any genuine issues of material fact, and whether the district court correctly applied the relevant substantive law." *Jesinger v.*

*Nevada Fed. Credit Union,* 24 F.3d 1127, 1130 (9th Cir.1994).

### DISCUSSION

■ We begin with the proposition that the general purpose of an interpleader action is to decide the validity and priority of *existing claims* to a res. We must then ask whether it is an action which gives suddenly invigilated creditors an opportunity to achieve priority by filing a lien against the interpled res. The answer to that question will point to the answer in this otherwise complicated case.

■ We have not previously addressed this precise issue. Nonetheless, both the Second and Fifth Circuits have wisely determined that interpleader actions focus on the claimants' rights at the time an interpleader action is filed and do not give priority to claims made after the action commences, or remove priority from claims which existed when the interpleader commenced.

The Second Circuit has ruled that, because the "court will normally adjudicate the rights of the claimants as of the time the interpleader fund is deposited with the court," a "claim not existing at the time the fund was created thus could not take precedence over preexisting claims." *Avant Petroleum, Inc. v. Banque Paribas, BP,* 853 F.2d 140, 143 (2d Cir. 1988). The court rejected the argument that the rights of parties and nonparties to an interpled fund "remain fluid during the course of the proceeding," and ruled instead that the "court normally determines the rights of the parties on the basis of the facts as they existed at the time the action was commenced." *Id.* In conclusion, the Second Circuit held that, in an interpleader action, preexisting claims are not afflicted with caducity, rather, "the court should normally determine priority as of the time the fund was created." *Id.* at 144.

Similarly, the Fifth Circuit followed *Avant Petroleum* and held that "activity subsequent to the initiation of an interpleader action is normally immaterial in determining which claimant has a superior right to the interpleader fund." *White v. FDIC,* 19 F.3d 249, 252 (5th Cir.1994). The court noted that

"any attempt to garnish property which is the subject of an action in interpleader begs the question which is the reason for the interpleader action-that is, which claimant is rightfully entitled to the fund." *Id.* at 253. Accordingly, the court concluded that an interpleader court generally should "determine the relative priorities of all claimants as of the time that the interpleader was initiated." *Id.*

 We agree with the sound reasoning of both the Fifth and Second Circuits and hold that a district court must normally determine the priority of claims in an interpleader action as they existed at the time the action was initiated. This rule is consistent with logic and with our own indication that funds held in the court's registry, as interpleader funds are held, are not usually subject to attachment or garnishment. *See United States v. Van Cauwenberghe,* 934 F.2d 1048, 1062–63 & n. 12 (9th Cir.1991). If we held otherwise, we would be ignoring general rules of procedure, as *Avant Petroleum* explained. Moreover, to allow a lien filed in an interpleader action to trump a lien which existed before the interpleader complaint was filed would be to beg the interpleader question. *See White,* 19 F.3d at 253. As the entire point of an interpleader action is to resolve then competing rights and claims, it makes perfect sense that the action itself cannot be used as a vehicle for further jockeying for claim position. It should just be a straightforward determination of the priority of the claims as they existed at the time the interpleader became viable. *See Avant Petroleum,* 853 F.2d at 143.

 That reality is not altered by the California statutory scheme regarding judgment creditor liens. California employs a rule that first in time is first in right when it determines lien priority. *See* Cal. Civ.Code § 2897; *see also Richion v. Mahoney,* 62 Cal.App.3d 604, 609, 133 Cal.Rptr. 262, 264–65 (1976). In addition to that rule, the parties stress California Code of Civil Procedure § 708.410, which governs the filing of judgment creditor liens in pending actions. That statute provides that a judgment creditor may file a lien against a "debtor who is a party to a pending action or special proceed-

ing...." Cal.Civ.Proc.Code § 708.410(a). IA argues that the only relevant "pending action" for § 708.410 purposes is the interpleader action, case 93–3228. As its lien was the first, and only, lien filed in the "pending action" of the interpleader, IA claims priority. We disagree with IA's analysis.

No doubt in the mine run of cases a creditor can file a lien on a debtor's cause of action and thereby obtain priority. But the issue here is whether that applies to the res when the action itself is simply for the purpose of determining what the rights and priorities were at the time that the action was filed. As we have already explained, it makes little sense to say that it does, and nothing in California law suggests the contrary. Of course, that is not to say that a judgment creditor cannot levy on amounts to which a claimant in the interpleader might become entitled, but the creditor cannot levy on the interpled fund itself and thus bootstrap itself into a direct right to that fund.

Viewed in this light, we conclude that the Vanier lien filed in cases 88–3072 and 89–0744 complied with the letter and spirit of § 708.410, but that § 708.410 simply cannot be used to give IA a priority lien in 93–3228, a case which was filed to determine what rights the parties *already had* in the $500,-000. We find that conclusion especially appropriate here, where the district court directed Texaco to file a separate interpleader action, so that Vanier had no choice but to enforce his previously-filed proper lien in the new case. Notably, also, it is clear that the district court never intended to allow the debtor, Ponsoldt, to settle the case free and clear of Vanier's lien. *See* Cal.Civ.Proc.Code § 708.440.

Therefore, there is no clash between the general rules governing federal interpleader actions and the California rule of first in time, first in right. *See generally Fleet Credit Corp. v. TML Bus Sales, Inc.,* 65 F.3d 119, 121–22 (9th Cir.1995). The status of Vanier's and IA's claims at the time the interpleader fund was established was the key and the California rules could be looked to in deciding what the priority rights were at that time. But, the filing of a lien in the interpleader action itself had no effect upon

the determination of who had the right to the interpled funds.

■ The only additional issue which we face in this action is the unusual timing of the interpleader. The interpleader action was actually filed one day *before* Vanier filed his lien in the underlying action, and even before there was any settlement fund to interplead. However, the interpleader was filed at the behest of the district court before the prior litigation had even been settled with that court's approval. It could as easily have been made a part of the original actions (cases 88–3072 and 89–0744) or consolidated with them. More than that, there could not, as a legal matter, have been a *settlement fund* to deposit in the interpleader action until the district court approved of the settlement, even though a sum of money was deposited before that. Before the money in question became a settlement fund, Vanier had already filed his lien in cases 88–3072 and 89–0744, and the district court has clearly indicated that it intended to have the lien attach to the settlement proceeds. Thus, when the settlement res sprang into existence, it was already burdened with Vanier's lien. Tellingly, IA had done nothing at that time. Therefore, at the time that the interpleader action became viable, Vanier had a lien claim, but IA did not. IA could not then better its posture by filing its own lien against Ponsoldt in the interpleader action.

## CONCLUSION

The priority of claims to the res in an interpleader action must normally be determined at the time the action is initiated, and cannot be altered by events after the interpleader fund becomes viable. Our decision here is consistent with that rule because the early filing of the interpleader action was a procedural device fostered by the district court for the purpose of deciding rights in the res. But that res did not exist until the settlement fund was actually created by the order of the district court. That occurred when it approved the proposed settlement. At that point, the Vanier lien was already effective. Thus, IA's lien, which was filed after the $500,000 became a true interpleader fund, is irrelevant to a determination of whose claim had priority. On the other hand, because Vanier's lien was filed before the $500,000 became a true interpleader fund, the district court properly determined that Vanier had priority. IA's rights were limited to whatever was left to be paid to Ponsoldt, but that was nothing.

**AFFIRMED.**