*161 JUSTICE WHEAT,
dissenting.
¶27 I respectfully dissent from the majority. I would hold that Mountain West’s untimely attempt to interplead the CGL funds failed because Behlmer and DeTienne had legally established their right and priority to the funds. The following sets out the full timeline of events relevant to this case:
* June 22.2012—Fitte started afire on his property that damaged Behlmer and DeTienne’s property. Fitte had two insurance policies with Mountain West: a personal liability/homeowners policy with a limit of $300,000, and a commercial policy with a CGL limit of $1 million, and an automotive limit of $500,000.[1]
* January 2. 2013—Behlmer filed a complaint against Fitte in State District Court.
* January 31. 2013—DeTienne filed a complaint against Fitte in State District Court.
* February 25, 2013—Mountain West filed a declaratory judgment action against Fitte in federal district court challenging the CGL coverage under the commercial policy.
* March 25, 2013—While the federal action was pending, Mountain West filed a complaint against Fitte in State District Court to interplead only the homeowners’ policy limits.
* May 31. 2013—Mountain West moved to deposit the $300,000 policy limit with the District Court. DeTienne intervened, arguing that Mountain West should be required to name all interested claimants and that both the personal and commercial CGL policy limits should be interpleaded. Mountain West resisted DeTienne’s efforts.
* July 10, 2013—The District Court granted Mountains West’s motion, and Mountain West deposited $300,000 with the interpleader court. In its order, the court specifically stated that all parties’ rights and claims “shall be fully preserved, unaffected, and not prejudiced by the deposit of the funds.”
* July 12.2013—Fitte admitted liability with regard to Behlmer’s complaint and agreed to arbitrate Behlmer’s damages. Mountain West elected not to participate.
* August 19, 2013—The federal court ruled that the commercial CGL policy covered the fire.
* September 13, 2013—Behlmer obtained a $500,000 judgment against Fitte based on the arbitration award.
*162 * September 30, 2013—Behlmer obtained a writ of execution and served a notice of levy and attachment of the CGL funds on Mountain West.
* October 16, 2013—DeTienne obtained a $1.9 million judgment against Fitte.
* November 6, 2013—Mountain West moved to deposit the $1 million CGL proceeds in the interpleader court.
* November 14.2013—DeTienne obtained a writ of execution and, on November 25, 2013, served a notice of levy and attachment of the CGL proceeds on Mountain West.
* January 2. 2014—The State District Court granted Mountain West’s motion to deposit the $1 million in the interpleader court.
* January 6, 2014—Upon the unopposed motion of the plaintiffs, the Behlmer and DeTienne cases were consolidated and Mountain West was joined as a party to the consolidated action.[2]
¶28 Based on the undisputed facts outlined above, Behlmer and DeTienne established priority over the CGL funds prior to the deposit of the funds in the interpleader court. As the District Court noted, “insurance proceeds, generally, may be subject to attachment and execution in a garnishment proceeding where a party obtains a judgement against an insured.” See §§ 25-13-402(3), and -501, MCA. Behlmer and DeTienne have judgments and have served writs of execution on Mountain West. Both parties also served a notice of levy and attachment of the CGL funds. Accordingly, under § 27-18-307, MCA,[3] Behlmer and DeTienne’s judgment hen accrued on September 30, 2013, and November 25, 2013, respectively, when the officer charged with executing the writs attached the CGL policy. The judgment hen, in turn, gave Behlmer and DeTienne priority over all *163 other junior claims pursuant to § 71-3-113, MCA[4].
¶29 Moreover, the subsequent interpleading of the CGL funds did not disturb the priority of the claims. It is well established that “[t]he interpleader procedure is not intended to alter substantive rights.” Reliance Nat’l Ins. Co. v. Great Lakes Aviation, Ltd., 430 F.3d 412, 415 (7th Cir. 2005) (citing Sanders v. Armour Fertilizer Works, 292 U.S. 190, 200, 54 S. Ct. 677 (1934); Avant Petroleum, Inc. v. Banque Paribas, 853 F.2d 140, 143 (2d Cir. 1988)). There is also no dispute that “[t]he right to retain a lien until the debt secured thereby is paid is a substantive property right.” James Talcott Constr. v. P & D Land Enters., 261 Mont. 260, 264, 862 P.2d 395 (1993).
¶30 Accordingly, I find the extra-jurisdictional case law Behlmer and DeTienne rely upon persuasive and dispositive. These cases stand for the proposition that the priority of a claim must remain intact and carry over to a subsequent interpleader action if priority is established before an interpleader action is initiated and the funds are deposited with the court. See Texaco Inc. v. Ponsoldt, 118 F.3d 1367, 1369-71 (9th Cir. 1997); White v. FDIC, 19 F.3d 249, 252 (5th Cir. 1994); Avant Petroleum, 853 F.2d at 143-44 (2d Cir. 1988).
¶31 In Avant Petroleum, the Second Circuit held that “once an interpleader action is commenced and the property has been deposited with the court... it remains appropriate for the court to determine the relative priorities of the claimants as of the time the interpleader fund was deposited with the court.” Avant Petroleum, 853 F.2d at 144 (emphasis added). In Texaco, the Ninth Circuit adopted the reasoning of the Second Circuit and further held that the applicable state law in that case did not alter the rationale that “it makes perfect sense that the [interpleader] action itself cannot be used as a vehicle for further jockeying for claim position. It should just be a straightforward determination of the priority of the claims as they existed at the time the interpleader became viable.” Texaco, 118 F.3d at 1370. The Ninth Circuit based this reasoning on the fact that the state in question, like Montana,[5] “employs a rule that first in time is first in right when it determines lien priority.” Texaco, 118 F.3d at 1370.
¶32 Here, the CGL funds did not become viable until the funds were deposited on or after January 2,2014. As such, Behlmer and DeTienne *164 had a valid, superior interest in the CGL funds when the funds were deposited and they are the rightful owners of the funds. I would hold that Behlmer and DeTienne remain entitled to enforce their respective judgments against Mountain West and that their priority must be respected and maintained in the interpleader action. To hold otherwise, as the majority has, is to ignore a well-established maxim of our jurisprudence: “The law helps the vigilant before those who sleep on their rights.” Section 1-3-218, MCA.
¶33 In conclusion, it must be noted that Mountain West had control of all the moving parts in this case. If Mountain West was so concerned with the claims of all the parties injured by the fire it could have interpleaded all of the insurance proceeds in one court, subject to its coverage challenges, but it did just the opposite—it withheld the CGL policy proceeds from the interpleader fund to the detriment of all the injured parties it claims to now be helping. When we look behind the “equity” smoke screen being generated in this case we see the levers are being manipulated by Mountain West, not Behlmer and DeTienne. Behlmer and DeTienne had every legal right to do and act as they did.
¶34 For these reasons, I dissent.
JUSTICE COTTER joins in the Dissent of JUSTICE WHEAT.

 The automotive limit is not at issue in this case.

 Despite the majority’s statement to the contrary, the consolidation order did not result in the withdrawal of the writs of execution. Rather, the District Court determined that it would “not file Mountain West’s motion to discharge the attachment in either action” because the briefing concerning attachment was “premature and thus, improperly filed.” As such, the court ordered the parties to “file cross-motions for summary judgement within 30 days of this order regarding whether the plaintiffs may attach the Mountain West policies and if so, whether this gives their claims priority over all other Corral Fire claimants.”

 Under § 27-18-307, MCA, “[a]ll liens by attachment shall accrue at the time the property of the defendant shall be attached by the officer charged with the execution of the writ, in the order in which the writs are levied, and said lien shall not be affected by any subsequent attachment or by any judgment obtained subsequent thereto.”

 “Other things being equal, different liens upon the same property have priority according to the time of their creation.” Section 71-3-113, MCA.

 See § 71-3-113, MCA.