**ASARCO LLC, Southern Peru Holdings, LLC, Plaintiffs,**

v.

**AMERICAS MINING CORPORATION, Defendant.**

**Civil No. 1:07-CV-00018.**

United States District Court, S.D. Texas, Brownsville Division.

June 2, 2009.

George Irvin Terrell, Michael C. Massengale, Rebeca Aizpuru Huddle, Samuel Wollin Cooper, Baker Botts, L.L.P., Garland Doty Murphy, IV, Smyser, Kaplan & Veselka, L.L.P., Houston, TX, James R. Prince, Eric A. Soderlund, Fernando Rodriguez, Jr., Jack L. Kinzie, Thomas Edward O'Brien, Baker Botts, L.L.P., Dallas, TX, Kevin M. Sadler, Baker Botts, L.L.P., Austin, TX, Shelby A. Jordan, Jordan Hyden, et al., Corpus Christi, TX, Michael J. Urbis, Jordan Hyden, et al., Brownsville, TX, for Plaintiffs, Asarco LLC and Southern Peru Holdings, LLC.

Charles A. Beckham, Jr., Brian F. Antweil, Elizabeth Brooks Hamilton, Kirk L. Worley, Mark Ryan Trachtenberg, Haynes & Boone, LLP, Houston, TX, David R. Gelfand, Luc A. Despins, Stacey J. Rappaport, Alan J. Stone, Melanie Westover, Milbank, Tweed, Hadley & McCloy, LLP, New York, NY, David S. Cohen, Milbank Tweed, et al., Washington, DC, for Defendant Americas Mining Corporation.

J.A. Tony Canales, Canales & Simonson, PC, Corpus Christi, TX, for Movant Daniel Tellechea.

Evelyn H. Biery, Zack A. Clement, Mark Allan Worden, Sharon Marie Beausoleil–Mayer, Fulbright Jaworski LLP, Houston, TX, Louis Raymond Strubeck, Jr., John N. Schwartz, Fulbright & Jaworski, Dallas, TX, for Intervenor Official Committee of Unsecured Creditors of Asarco LLC.

Jacob Lee Newton, Robert T. Brousseau, Sander L. Esserman, Steven A. Felsenthal, Jo E. Hartwick, Stutzman Bromberg, et al., Dallas, TX, for Intervenor Official Committee of Unsecured Creditors of the Subsidiary Debtors.

Debra L. Innocenti, John H. Tate, II, Raymond W. Battaglia, Oppenheimer, Blend, Harrison & Tate, San Antonio, TX, for Future Claims Representative Robert C. Pate.

## MEMORANDUM OPINION AND ORDER

ANDREW S. HANEN, District Judge.

On April 15, 2009, this Court entered its final judgment in the above-styled case, awarding ASARCO LLC ("ASARCO") the return of 260,093,694 shares of Common Stock ("SCC shares") of Southern Copper Corporation ("SCC") and $1,382,307,216.75 in money damages and prejudgment interest. (Doc. No. 508). On April 29, 2009, Americas Mining Corporation ("AMC") filed a Motion for Stay of Execution of Judgment Pending Appeal, asking this Court to stay the execution of both the nonmonetary and monetary portions of its final judgment through the conclusion of AMC's appeal to the Fifth Circuit. (Doc. No. 515). ASARCO filed its Response on May 18, 2009, urging the Court to refuse a stay of the nonmonetary portion altogether and to grant a stay of the monetary portion only upon provision by AMC of a full supersedeas bond. (Doc. No. 520). AMC filed a Reply on May 22, 2009 (Doc. No. 523), and a Supplemental brief on May 29, 2009. (Doc. No. 528). This Court held a hearing on May 27, 2009, to consider oral argument and testimony concerning, *inter alia*, AMC's Motion to Stay and now issues the following ruling.

Having considered AMC's Motion for Stay of Execution of Judgment Pending Appeal, ASARCO's Response, AMC's Reply and Supplemental brief, the argument and testimony of the hearing held May 27, 2009, as well as all relevant facts and law, AMC's Motion for Stay (Doc. No. 515) is hereby **PARTIALLY GRANTED AND PARTIALLY DENIED.**

### Discussion

AMC requests stay of execution of this Court's judgment pursuant to Rule 62 of the Federal Rules of Civil Procedure. (Doc. 515 at 1). Rule 62 outlines various conditions for staying proceedings to enforce a judgment. AMC's request for a stay implicates sections (c) and (d) of Rule 62.[1] Rule 62(c) applies by its terms to orders involving injunctive relief. *See* FED.R.CIV.P. 62(c) ("Injunction Pending an Appeal. . . ."). Courts generally hold that Rule 62(d) applies only to monetary judgments. *See Halliburton Energy Servs., Inc. v. NL Indus.*, Nos. H–05–4160, H–06–3504, 2008 WL 2787247, at *4 (S.D.Tex. July 16, 2008); *United States v. Goltz*, No. SA–06–CA–503–XR 2007 WL 295558, at *1 (W.D.Tex. Jan. 25, 2007) ("The applicability of Rule 62(d) turns on whether the judgment involved is monetary or nonmonetary. . . ."). Thus, Rule 62(d) applies only to the monetary portion of the Court's judgment, i.e., the $1,382,307,216.75 in money damages and prejudgment interest.

The portion of the judgment awarding the SCC shares is not a monetary judg-

---

**1.** AMC's request also potentially implicates section (f), as discussed *infra*.

ment, nor does it have all the indicia of injunctive relief. *See, e.g., Donovan v. Fall River Foundry Co.,* 696 F.2d 524 (7th Cir.1982). In circumstances such as these, courts explain that Rule 62(c) should be "applied to an order to do, rather than an order to pay, whether or not the order to do is a conventional injunction." (*Id.* at 526). Return of shares of stock better approximates an order to do, rather than an order to pay, since the shares do not represent a discrete monetary value, but rather fluctuate in price on a daily basis. Further, the judgment in this respect orders the return of the shares themselves, not their equivalent value. Accordingly, for the purposes of this Order, the Court shall characterize the portion of the judgment awarding the SCC shares as an "order to do," and so apply Rule 62(c).

## I. The Nonmonetary Portion of the Judgment (the SCC Shares)

█ Rule 62(c) provides in relevant part:

### (c) Injunction Pending an Appeal

While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

. . .

FED.R.CIV.P. 62(c). A request for a stay pursuant to Rule 62(c) is evaluated in light of four factors: (1) whether AMC's appeal is likely to succeed on the merits; (2) whether AMC would suffer irreparable injury if the stay were denied; (3) whether granting the stay would substantially harm the other parties; and (4) whether granting the stay would serve the public interest. *United States v. State of Louisiana,* 815 F.Supp. 947, 949 (E.D.La.1993); *see Arnold v. Garlock, Inc.,* 278 F.3d 426, 439–

42 (5th Cir.2001); *Ruiz v. Estelle,* 650 F.2d 555, 565 (5th Cir.1981). If the balance of the equities (i.e., factors 2–4) "heavily" favors AMC, then it need only present (1) a substantial case on the merits (2) when a serious legal question is involved. *United States v. Baylor Univ. Med. Ctr.,* 711 F.2d 38, 39 (5th Cir.1983).

█ The Court finds that the balance of equities in this particular situation heavily favors AMC. First, testimony at the hearing indicated that were this Court to deny AMC's motion and require it to immediately transfer the SCC shares to ASARCO, AMC could suffer significant adverse tax consequences, causing AMC irreparable harm. Second, granting a stay under the conditions imposed by this Order would not substantially harm any of the other parties to this suit, since the Court hereby orders that AMC deposit the SCC shares at issue in an escrow account with a neutral third party, or the Registry of the Court, during the pendency of AMC's appeal. (*See infra*).

ASARCO contends that a stay, by preventing ASARCO from taking possession of the stock, would deprive ASARCO of the shares' voting rights, which ASARCO maintains constitutes irreparable harm. (*See* Doc. No. 520 at 6). This argument fails for three reasons. First, the cases ASARCO cites for this proposition are from the Second Circuit and so do not control. Second, assuming that denial of voting rights does constitute an irreparable harm, denying the stay, and so allowing ASARCO to deprive AMC of possession of the shares during the appeal, would cause the very same "irreparable harm" to AMC precisely to the extent that *AMC* would be denied voting rights. Thus, if we accept ASARCO's argument, ASARCO will lose whatever it gains on the third factor (harm to ASARCO) to consideration of the second factor (harm to AMC).

Third, this Order provides a method for either party to obtain court approval to vote the shares upon presentation, and subsequent granting, of the appropriate motion.

The fourth factor, whether a stay would serve the public interest, also favors AMC. First, case law in this circuit indicates that this factor can be met simply by a showing that granting a stay would *not disserve* or *interfere with* the public interest. *See Southerland v. Thigpen*, 784 F.2d 713, 715 n. 1 (5th Cir.1986); *Brown v. Braddick*, 595 F.2d 961, 965 (5th Cir.1979). The Court can perceive no harm to the public interest consequent to granting a stay of the stock transfer under the terms described herein. Second, the Court finds that granting a stay in this case would in fact serve the public interest. Although argument at the hearing indicated that the various groups of creditors are split on their support of AMC's Motion for Stay, hundreds, if not thousands, of asbestos plaintiffs and those suffering from environmental damage stand to gain from this stay, while any other creditors may also gain from competition among three separate plans for confirmation in the bankruptcy proceeding. Thus, the Court finds that the balance of the equities heavily favors AMC.

If the balance of the equities heavily favors AMC, then it need only present (1) a substantial case on the merits (2) when a serious legal question is involved. A serious legal question is one "of substantial import to others." *Nat'l Treasury Employees Union v. Von Raab*, 808 F.2d 1057, 1059 (5th Cir.1987). The Court finds that to the extent that all three of the causes of action on which ASARCO prevailed turn on matters of law heretofore undecided by the Fifth Circuit—matters that implicate a wide range of important corporate-governance, fiduciary, and bankruptcy issues—

this case on the merits involves serious legal questions, i.e. questions of substantial import to others, the resolution of which could have "far-reaching effects." *See Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir.1992). Finally, while the case law does not necessarily take into consideration the size of the judgment in determining whether a case is "substantial", the sheer size of this judgment, which by some estimates exceeds $5 billion, certainly raises the appearance of a substantial case, and the probability of irreparable harm, thereby increasing the import of appellate review. For all these reasons, the Court finds that AMC has met its burden and grants a stay of the nonmonetary portion of the judgment under the conditions described *infra*.

## II. The Monetary Portion of the Judgment ($1,382,307,216.75 in Money Damages and Prejudgment Interest)

Federal Rule 62(d) "establishes a general rule that losing parties in the district court can obtain a stay pending appeal only by giving a supersedeas bond." *Enserch Corp. v. Shand Morahan & Co., Inc.*, 918 F.2d 462, 463–64 (5th Cir.1990). Rule 62(d) provides in relevant part:

> **(d) Stay with Bond on Appeal**
>
> If an appeal is taken, the appellant may obtain a stay by supersedeas bond.... The bond may be given upon or after filing the notice of appeal or after obtaining the order allowing the appeal. The stay takes effect when the court approves the bond.

FED.R.CIV.P. 62(d). The leading Fifth Circuit case on application of Rule 62(d) is *Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc.* 600 F.2d 1189 (5th Cir.1979). "The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing

party's rights pending appeal." *Id.* at 1190–91. The bond is intended to secure the non-appealing party "against any loss sustained as a result of being forced to forgo execution on a judgment during the course of an ineffectual [appeal]." *Id.* at 1191. Put another way, "the rationale for requiring a bond pending appeal is to secure the judgment throughout the appeal process against the possibility of the judgment debtor's insolvency." *Grubb v. FDIC,* 833 F.2d 222, 226 (10th Cir.1987) (citing, *inter alia, Poplar Grove* ).

Under *Poplar Grove,* the general rule is that the appealing party must post a bond for the full amount of the judgment, plus costs of appeal, interest, and any estimated damages attributed to the delay. 600 F.2d at 1191 (reciting the terms of the predecessor of Federal Rule 62(d), Civil Rule 73(d), which the court holds as providing the general rule in applying 62(d)). To invoke an exception to this general rule, AMC has the burden to either: (1) demonstrate objectively a "present financial ability to facilely respond to a money judgment" and present a "financially secure plan for maintaining that same degree of solvency during the period of the appeal" or (2) demonstrate that AMC's "present financial condition is such that the posting of a full bond would impose an undue financial burden." *Id.* If AMC meets the first test, the Court "may then exercise a discretion to substitute some form of guaranty of judgment responsibility for the usual supersedeas bond." If AMC meets the second test, "the court similarly is free to exercise a discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings . . . ." *Id.* Ultimately, this precedent "instructs [that] courts possess considerable discretion to devise an alternative to posting a supersedeas bond." *In re Decker Oaks Dev. II, Ltd.,* No. 07–35557–H4–11, 2008

WL 2812172, at *5 (Bankr.S.D.Tex. July 21, 2008).

■ The Court finds that AMC has demonstrated that its present financial condition is such that the posting of a full cash bond would impose an undue financial burden and that ASARCO's need for security can be satisfied by alternative means. The Court heard testimony that it would be extremely difficult, if not impossible, for AMC to provide the collateral necessary to both post a full supersedeas bond and finance its reorganization plan in the bankruptcy proceeding. Thus, if this Court were to require AMC to post a full bond, ASARCO's creditors would be denied the benefit of competition among three, rather than two, plans for creditor support. On many previous occasions in this case, this Court has noted that on a number of issues, ASARCO was standing in the shoes of its creditors and was acting for their benefit. The Court cannot now take an inconsistent view. In this sense, the burden placed on AMC by requiring a full bond would be undue to the extent that ASARCO's creditors, the ultimate judgment debtors in this case, would be harmed by losing the benefit of having a third reorganization plan on which to leverage their interests.

At least one sister court has held that several additional factors are relevant in determining whether to waive or modify the bond requirement, including: (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the bond is so plain that the cost of a bond would be a waste of money; (5) whether the defendant is in such a precarious financial position that the re-

quirement to post a bond would place other creditors of the defendant in an insecure position. *Halliburton Energy Servs., Inc. v. NL Indus.*, Nos. H–05–4160, H–06–3504, 2008 WL 2787247, at *2 (S.D.Tex. July 16, 2008).

Two of these factors particularly favor modifying the bond requirements in this case. First, if there are other assets in addition to the SCC stock that could satisfy this judgment, the actual location of those assets is probably outside the United States, and so collection of the monetary portion of the judgment could be especially complex. Second, the Court is satisfied that the bonding arrangements described herein will secure the assets necessary to pay any ultimate judgment debtors in this case, i.e., ASARCO's creditors, in the event of an unsuccessful appeal. Moreover, by preserving AMC's ability to obtain the financing necessary to submit its reorganization plan in the bankruptcy proceeding, the Court's bonding terms will facilitate extra competition among bidders for ASARCO's assets, the benefit of which will likely redound to ASARCO's creditors.

Finally, and perhaps most importantly, it has been held that "only extraordinary circumstances will support the provision of security other than a supersedeas bond." *United States v. Kurtz*, 528 F.Supp. 1113, 1115 (E.D.Pa.1981) (citing, *inter alia, Poplar Grove* ) (internal quotations omitted). The Court finds that the circumstances of this particular case are indeed extraordinary in several ways. First, as testified to at the hearing, the current global credit crisis makes securing a supersedeas bond in an amount approaching $1.4 billion even more difficult and expensive than under more normal credit conditions. Second, the relationship between the plaintiff and the defendant in this case is exceedingly unusual in that Defendant AMC still owns 100% of Plaintiff ASARCO. Third, AMC, through the parallel bankruptcy proceeding, is in a position to receive any assets in excess of allowed creditor claims, including whatever remains of the judgment against AMC in the instant case. Thus, the Court could be requiring AMC to post a bond to secure a judgment of which AMC may ultimately receive part of the proceeds. In these circumstances, requiring a full bond creates a unique possibility that the money used to acquire the bond will be wasted since AMC could possibly end up owning the very judgment it is now appealing. Third, the crux of this case has always concerned the SCC shares themselves. The monetary portion of the judgment represents dividends paid on those shares, plus accumulated interest, and while important, it has always been a secondary concern. Further, the Court heard uncontroverted testimony that AMC's principal assets consist entirely of SCC shares.[2] Thus, were ASARCO to execute on the judgment right now, it would only have access to these shares to satisfy the monetary portion of the judgment. This Court's security arrangement effectively pledges an amount of SCC shares equal to twice the value of the monetary judgment, thereby securing the judgment with precisely the collateral upon which ASARCO would have had to execute.[3]

---

**2.** AMC does in theory possess one other asset, i.e. Plaintiff ASARCO, but to the extent that ASARCO is in bankruptcy, these assets would not be available to satisfy the judgment. Nor would it make sense to do so, in any case, since ASARCO would then be taking from Peter to pay Peter.

**3.** The Court notes that both it and the Bankruptcy Court are in somewhat of a "chicken and egg" situation. If the bankruptcy had a plan in place, it would make this Court's analysis here easier; on the other hand, the Bankruptcy Court would no doubt be in a better position to weigh the proposed plans were this judgment finally decided.

For all of these reasons, this Court is of the view that the circumstances of this case are sufficiently extraordinary to warrant a modification of the terms necessary to secure the monetary portion of the judgment. Further, the Court finds that requiring a full supersedeas bond would constitute an undue burden on AMC that would likely deprive ASARCO's creditors of the benefit of entertaining a competing reorganization plan in the bankruptcy proceeding. Accordingly, the Court has exercised its "discretion to fashion some other arrangement for substitute security through an appropriate restraint on the judgment debtor's financial dealings" in the manner set out herein and in so doing, effectively "preserve[s] the status quo while protecting the non-appealing party's rights pending appeal." *Poplar Grove*, 600 F.2d at 1191; *id.* at 1190–91.

## III. Rule 62(f)

AMC urges alternatively that under Federal Rule of Civil Procedure 62(f) and applicable Texas law, AMC is entitled to supersede the monetary portion of the judgment by posting a $25 million bond. (Doc. No. 515 at 15). Rule 62(f) provides: "If a judgment is a lien on the judgment debtor's property under the law of the state where the court is located, the judgment debtor is entitled to the same stay of execution the state court would give." Fed.R.Civ.P. 62(f). Under Texas law, a judgment debtor is entitled to a stay of a money judgment pending appeal upon posting security in conformity with the following provisions:

(a) Subject to Subsection (b), when a judgment is for money, the amount of security must equal the sum of: (1) the amount of compensatory damages awarded in the judgment; (2) interest for the estimated duration of the appeal; and (3) costs awarded in the judgment.

(b) Notwithstanding any other law or rule of court, when a judgment is for money, the amount of security must not exceed the lesser of: (1) 50 percent of the judgment debtor's net worth; or (2) $25 million.

Tex. Civ. Prac. & Rem.Code § 52.006. Thus, under Rule 62(f), the required supersedeas bond for the monetary portion of the judgment cannot exceed $25 million, so long as the judgment "is a lien on [AMC's] property" under Texas law.

AMC acknowledges that "a judgment by itself is not automatically a lien under Texas law." (Doc. No. 515 at 16 (citing *White v. FDIC*, 19 F.3d 249, 251 n. 5 (5th Cir. 1994))). Nonetheless, AMC cites two federal district-court cases for the proposition that the extra step necessary under Texas law to turn a judgment into a lien, i.e., the recording of an abstract of judgment, is merely a "ministerial act", and so, for purposes of Rule 62(f), a judgment in Texas is effectively a lien. (*Id.* (citing *Umbrella Bank, FSB v. Jamison*, 341 B.R. 835, 842–43 (W.D.Tex.2006); *Euromed, Inc. v. Gaylor*, No. CIV.A. 3–97–CV–0322, 1999 WL 46224 (N.D.Tex. Jan. 22, 1999))). AMC also acknowledges, however, that a more recent case out of the Western District of Texas "parts ways with this authority," holding that preparing an abstract of judgment is not a ministerial act, and so a judgment is not a lien for purposes of Rule 62(f). (*Id.* (citing *El Paso Indep. Sch. Dist. v. Richard R.*, 599 F.Supp.2d 759 (W.D.Tex.2008))).

Given that the Fifth Circuit has yet to consider this issue, and given the particular circumstances of this case—including a monetary judgment roughly 52 times the maximum bond under Texas law—and the rationale underlying Rule 62(d) as explained in *Poplar Grove* and other cases, the Court declines to follow this unblazed trail.

## Bonding Requirements

1. AMC shall place 260,093,694 shares of Common Stock of Southern Copper Corporation ("SCC") (i.e., the nonmonetary portion of the judgment) in an escrow account with a neutral third party agreed to by Plaintiffs and Defendant (or if no agreement can be reached, in the Registry of the Court) subject to the terms of a mutually agreed upon escrow agreement;

2. In addition to the shares covered in paragraph 1, AMC shall place additional SCC shares in an amount equaling twice the value of $1,382,307,216.75 (the monetary portion of the judgment) in the same escrow account, again subject to the terms of a mutually agreed upon escrow agreement. In the event that the monetary value of these shares, as determined by a 20-day trailing-average share price, falls below an amount equaling 1.75 times $1,382,307,216.75, AMC shall add more SCC stock to the escrow account in the amount of such shares necessary to return the total value to double the value of $1,382,307,216.75;

3. Absent a further order of this Court, neither of the categories of shares described in paragraphs 1 and 2 (nor those shares described *infra* in paragraph 4) may be pledged as security, or in any other way encumbered, for any purpose other than to secure this Court's judgment in the manner described herein;

4. With respect to any dividends generated by the shares described in paragraphs 1 and 2, or by shares previously escrowed under this paragraph, between April 15, 2009, and the conclusion of AMC's appeal, AMC shall, at its discretion, either deposit such dividends into the escrow account as cash or cash equivalents or, alternatively, place an amount of unencumbered shares of Common Stock of SCC equaling twice the monetary value of such dividends into the escrow account, under the same terms and conditions described herein. AMC shall give ASARCO 10–days' notice of any impending dividend payment;

5. AMC shall immediately take all necessary steps to achieve the registration of the SCC shares;

6. The voting and non-transferability restrictions contained in this Court's Agreed Order dated April 15, 2009 (Doc. No. 509), shall apply to the shares described in paragraphs 1, 2, and 4. Either party may petition the Court at any time regarding the issue of voting or not being able to vote the shares of stock subject to this Order;

7. Any further terms and conditions regarding the bonding arrangements described herein shall be negotiated by the parties to this suit, with this Court available to resolve any disputes;

8. At the earlier of November 5, 2009, or 60 days after the date any plan, other than the plan proposed by Grupo/AMC, is confirmed by the Bankruptcy Court, AMC shall replace the security for the monetary portion of the judgment described in paragraph 2 with a supersedeas bond of $1,382,307,216.75, and the security for any dividends deposited pursuant to paragraph 4 shall be replaced with a supersedeas bond equal to the amount of the dividends. Once replaced with a bond, the amount of stock deposited by AMC pursuant to paragraphs 2 and 4 shall be returned to AMC;

9. If the Bankruptcy Court is unable to confirm a plan by November 5, 2009, or for other good cause, this Court will consider an appropriate motion for an extension of the deadline described in

paragraph 8, although the movant will bear the burden to show cause;

10. This Court retains jurisdiction over this Order and/or the bonding requirements involved in this case unless superseded by an order of the Fifth Circuit.

11. This Court's Order dated April 15, 2009, shall remain in effect beyond June 5, 2009, and shall remain in effect unless and until superseded by a specific provision herein, or by another order of this Court or the Fifth Circuit.[4]

12. Once the stock, cash, or cash equivalent described herein is deposited in escrow, neither party shall remove such stock, cash, or cash equivalent absent an order from this Court or the Fifth Circuit specifically authorizing withdrawal.

13. All other relief sought by either party and not contained in this Order is hereby DENIED.

4. This Court contemplates entering such a superseding order by early July 2009, once it becomes clear that the above security arrangement has been instituted or, alternatively, it becomes clear that, for whatever reason, the parties have not accomplished the security arrangements contemplated by the instant Order.