FILED

12/28/2016

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0103

DA 16-0103

IN THE SUPREME COURT OF THE STATE OF MONTANA

2016 MT 349

ASSOCIATED DERMATOLOGY AND SKIN
CANCER CLINIC OF HELENA, P.C. PROFIT
SHARING PLAN AND TRUST FOR THE
BENEFIT OF STEPHEN D. BEHLMER, M.D.,

       Plaintiff and Appellant,

v.

ROBERT S. FITTE,

       Defendant and Appellee.

KEVIN DETIENNE AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF
VIBEKE B. DETIENNE, KEVIN DETIENNE
AS TRUSTEE OF THE VIBEKE DETIENNE
LIVING TRUST, AND KEVIN DETIENNE,
INDIVIDUALLY,

       Plaintiffs and Appellants,

       v.

ROBERT S. FITTE,

       Defendant.

MOUNTAIN WEST FARM BUREAU
MUTUAL INSURANCE COMPANY,

       Joined Party.

APPEAL FROM:    District Court of the First Judicial District,
                 In and For the County of Lewis and Clark, Cause No. DDV-2013-690
                 Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Erik B. Thueson, Thueson Law Office, Helena, Montana

Scott L. Peterson, Morrison, Sherwood, Wilson & Deola, PLLP, Helena, Montana
(*Attorneys for Associated Dermatology*)

Thomas A. Budewitz, Attorney at Law, Townsend, Montana
(*Attorney for Kevin DeTienne*)

For Appellee:

Curt Drake, Patricia H. Klanke, Drake Law Firm, P.C., Helena, Montana
(*Attorneys for Robert S. Fitte*)

Randall G. Nelson, Jared S. Dahle, Nelson & Dahle, P.C., Billings, Montana

Martha Sheehy, Sheehy Law Firm, Billings, Montana
(*Attorneys for Joined Party Mountain West Farm Bureau*)

Submitted on Briefs:  October 12, 2016

Decided:  December 28, 2016

Filed:

_____
Clerk

2

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1     This is an appeal from an order granting summary judgment in favor of Appellee Robert S. Fitte (Fitte) and Joined Party Mountain West Farm Bureau Mutual Insurance Company (Mountain West). Appellants Associated Dermatology and Skin Cancer Clinic of Helena, P.C. Profit Sharing and Trust Benefit of Stephen D. Behlmer, M.D. (Behlmer) and Kevin DeTienne as Personal Representative of the Estate of Vibeke B. DeTienne, Kevin DeTienne as Trustee of Vibeke B. DeTienne Living Trust, and Kevin DeTienne, Individually (DeTienne) attempted to execute judgments obtained against Fitte in their respective underlying lawsuits by attaching the proceeds of a commercial liability policy issued to Fitte by Mountain West. Mountain West moved to deposit the proceeds of the commercial policy into an existing interpleader action following a determination in a separate declaratory proceeding in federal court that the commercial policy covered Fitte's actions. The underlying proceedings filed by Behlmer and DeTienne against Fitte were consolidated and the District Court considered the question of whether Behlmer and DeTienne were entitled to execute judgments secured outside the pending interpleader action and attach the proceeds of the commercial policy. The District Court granted summary judgment in favor of Fitte and Mountain West, discharged the writs of execution against Fitte and Mountain West, and stayed their execution until the interpleader court could apportion the funds. We affirm.

¶2     We restate the dispositive issues as follows:

> *1.   Whether the District Court correctly concluded that the proceeds from the commercial policy must be distributed through the interpleader.*

3

*2. Whether deposit of funds is required to establish the interpleader court's jurisdiction under M. R. Civ. P. 22.*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Fitte, an insured of Mountain West, was burning trees damaged by beetle kill near his driveway on June 23, 2012. Fitte was concerned the trees would fall and damage his vehicles, including the truck Fitte used for his residential remodeling business operated from his home. The fire got out of control and burned a substantial area of the Scratch Gravel Hills near Helena, Montana, affecting approximately thirty-five of Fitte's neighbors. Many properties and vehicles were damaged or destroyed by what has become known as the Corral Fire.

¶4 On January 2, 2013, Behlmer filed a complaint against Fitte for damages to its property. On January 31, 2013, DeTienne filed its complaint against Fitte.[1] Fitte had three insurance policies with Mountain West: a personal liability policy with a limit of $300,000; a commercial general liability policy covering Fitte's business with a limit of $1,000,000; and an automobile liability policy with a limit of $500,000.[2] Mountain West accepted coverage under the personal policy, but disputed coverage under the commercial policy and maintained that Fitte was not engaged in the business of siding or contracting at the time of the fire. On February 25, 2013, Mountain West filed a declaratory action in federal court to resolve the coverage issue.

¶5 Realizing the extent of damage and the potential number of claimants affected, on March 25, 2013, Mountain West filed an interpleader action in the First Judicial District

---

[1] The cases were subsequently consolidated on January 6, 2014.
[2] The automobile policy is not at issue in this case.

Court. Not wishing to require each claimant to pay an appearance fee or retain counsel, particularly since informal resolution of claims remained a possibility, Mountain West named Fitte as the nominal defendant. On May 31, 2013, Mountain West moved to deposit the $300,000 personal liability limit with the interpleader court. However, Mountain West explained in its motion that depositing the commercial policy proceeds of $1,000,000 with the interpleader court would require it to give up its right to litigate the coverage issue in federal court. Mountain West maintained that depositing the policy limits in the state interpleader court would deprive the federal court of jurisdiction over the res as the funds were the subject matter and substance of the dispute in federal court. Nonetheless, Mountain West represented that "[c]ertainly, if a court of last resort adjudicated the business policy as applicable to the Fitte loss, then Mountain West would deposit the funds in [the interpleader] action (if the parties were unable to reach agreement as to apportionment of the funds), but it cannot be asked or expected to do so until an adverse final judgment were entered in the federal court." DeTienne intervened in the interpleader action and argued that Mountain West named the wrong party and should have named each of the claimants. DeTienne consented, however, to deposit of the $300,000 in the interpleader on condition that the deposit would not be construed as a release of Mountain West from its potential liability under all the policies. The court ordered that the $300,000 be deposited in the interpleader action; that Mountain West "shall not dispense the funds without further notice to all landowners, who shall be given an opportunity to be heard and/or appear;" and that all parties' rights and claims "shall be fully preserved, unaffected, and not prejudiced by the deposit of the funds."

5

¶6    Meanwhile, Behlmer, DeTienne and Fitte had been negotiating regarding the underlying lawsuits. Fitte admitted liability in both proceedings and, with respect to Behlmer, stipulated to a judgment which was entered on July 12, 2013. Behlmer and Fitte agreed to arbitrate damages and, in accordance with the arbitration results, the court issued a judgment in favor of Behlmer against Fitte for $500,000. As part of the arbitration, Behlmer agreed it would satisfy its judgment only through Fitte's insurance and not against Fitte personally. In the DeTienne lawsuit, a confessed judgment against Fitte was entered for $1.9 million on October 16, 2013. DeTienne also agreed not to execute against Fitte personally.

¶7    On August 19, 2013, the federal court resolved the coverage dispute and held that the commercial policy covered the fire damage. Thereafter, Behlmer filed a notice of levy and attachment against the proceeds of the commercial policy on September 30, 2013; DeTienne filed a writ of execution against the proceeds of the commercial policy on November 14, 2013. Mountain West moved to deposit the $1,000,000 commercial policy limits in the interpleader court and to discharge both attachments filed by Behlmer and DeTienne.

¶8    In a consolidation order stipulated to by the parties, the writs of execution were withdrawn and Mountain West's motions to discharge the writs were deemed moot. At the request of the District Court, the parties filed cross-motions for summary judgment on the issue of whether the $1,000,000 commercial policy should be apportioned through the interpleader action or should be applied to satisfy the Behlmer and DeTienne judgments apart from the interpleader proceedings. In its order granting summary judgment to Fitte

6

and Mountain West, the District Court reasoned that Mountain West filed its complaint in interpleader prior to Behlmer and DeTienne having secured judgments against Fitte. At the time Behlmer and DeTienne secured their judgments, the interpleader action had been initiated even though the disputed funds of $1,000,000 had not been deposited. The District Court recognized that an action for interpleader under Montana's law did not have a deposit requirement and concluded that the date upon which the interpleader action is deemed initiated "can be only the date the action was filed." The District Court determined that the complaint in interpleader, having been filed on March 25, 2013, preceded entry of the Behlmer and DeTienne judgments and that, accordingly, the proceeds belonged to the interpleader court and were neither Fitte's property nor a debt owed to him. The District Court ruled that the insurance funds were not subject to attachment and execution by Behlmer or DeTienne outside of the interpleader action.

## STANDARD OF REVIEW

¶9 This Court reviews an order granting summary judgment de novo, applying the same M. R. Civ. P. 56(c) criteria as the district court. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. This Court reviews a district court's conclusions of law de novo. *Newbury v. State Farm Fire & Cas. Ins. Co.*, 2008 MT 156, ¶¶ 14-15, 343 Mont. 283, 184 P.3d 1021.

**DISCUSSION**

¶10 *1. Whether the District Court correctly concluded that the proceeds from the commercial policy must be distributed through the interpleader.*

¶11 Behlmer and DeTienne argue that each of their judgments obtained in the underlying proceedings became a lien against the commercial policy limits which was enforceable pursuant to § 25-9-301(2), MCA, from the time the judgment was docketed. Behlmer and DeTienne maintain that because their judgments were obtained prior to the deposit of the commercial proceeds into the interpleader court, their judgments should have priority over other competing claims to the insurance proceeds. Behlmer and DeTienne ask that this Court hold they have secured interests in the $1,000,000 that was deposited with the interpleader court and that we direct the interpleader court to recognize their priorities in apportioning the interpleaded fund. Alternatively, Behlmer and DeTienne argue that Mountain West, having failed to honor the writs, be held "personally" liable for the lien amounts pursuant to § 27-18-407, MCA.

¶12 Fitte and Mountain West maintain that the purpose of interpleader is to determine the priority of claims to the insurance proceeds available to cover the Corral Fire. They contend that two claimants having obtained judgments is not a bar to interpleader as claims that have been reduced to judgment are a common subject of interpleader. Fitte and Mountain West argue that the subject of the interpleader was "all available insurance proceeds," regardless of whether those proceeds had been deposited. Finally, Mountain West argues that insurance policy proceeds are not personal property subject to execution pursuant to § 25-13-501, MCA.

8

¶13 Interpleader is an action "'[r]ooted in equity, [and] a handy tool to protect a stakeholder from multiple liability and the vexation of defending multiple claims to the same fund.'" *6247 Atlas Corp. v. Marine Ins. Co.*, 155 F.R.D. 454, 460-61 (1994) (quoting *Washington Elec. Coop., Inc. v. Paterson, Walker & Pratt, P.C.*, 985 F.2d 677, 679 (2d Cir. 1993)). *See generally*, 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1702, 533-37 (3d ed. 2001); *Maryland Casualty Company v. Glassell-Taylor & Robinson*, 156 F.2d 519, 523-24 (5th Cir. 1946). To this end, the interpleader rule must be liberally construed to protect the stakeholder from the expense of defending twice and to protect against double liability. *New York Life Insurance Company v. Welch*, 297 F.2d 787, 790 (D.C. Cir. 1961). The fact that an interpleaded claimant has a judgment against the stake does not defeat the right to interplead. *See Matter of Bohart*, 743 F.2d 313, 325 (5th Cir. 1984), citing 3A Moore's Federal Practice ¶ 22.08[1] n.4 (1984). Accordingly, claims that have been reduced to judgment are common subjects of interpleader. *See, e.g.*, *Treinies v. Sunshine Mining Co.*, 308 U.S. 66, 68, 60 S. Ct. 44, 46 (1939) ("The occasion for the interpleader was the existence of inconsistent judgments as to the ownership of the Sunshine stock."). The right to maintain interpleader exists even after judgment has been obtained by one of the adverse claimants. *Montgomery Ward & Co. v. Fidelity & Deposit Co. of Md.*, 162 F.2d 264, 268 (7th Cir. 1947).

¶14 In its definitive opinion on the subject of interpleader, *State Farm Fire & Cas. Co. v. Tashire*, 386 U.S. 523, 87 S. Ct. 1199 (1967), the Supreme Court addressed the question of whether interpleader was available when competing claimants had not had

their claims reduced to judgment, concluding that an insurance company was not required to wait until at least two claimants reduced their claims to judgment. The Supreme Court reasoned that "considerations of judicial administration" demonstrate that were an insurance company required to await reduction of claims to judgment, "the first claimant to obtain such a judgment or to negotiate a settlement might appropriate all or a disproportionate slice of the fund before his fellow claimants were able to establish their claims." *Tashire*, 386 U.S. at 533. The Court observed that the "difficulties such a rush to judgment may pose for the insurer, and the unfairness which may result to some claimants, were among the principal evils the interpleader device was intended to remedy." *Tashire*, 386 U.S. at 533.

¶15 The aforementioned authority construes Fed. R. Civ. P. 22 and, at times, the federal interpleader statute, 28 U.S.C. § 1335. However, there are differences between the two. "[S]tatutory interpleader relaxes the [federal] diversity jurisdictional requirements in exchange for the somewhat onerous requirement of depositing the stake with the Court." *6247 Atlas Corp.*, 155 F.R.D. at 461. Montana's interpleader rule as set forth in M. R. Civ. P. 22(a) is identical to Fed. R. Civ. P. 22. It is therefore appropriate to look to federal jurisprudence interpreting the counterpart to Montana's rule. *Farmers Union Mut. Ins. Co. v. Bodell*, 2008 MT 363, ¶ 21, 346 Mont. 414, 197 P.3d 913. Further, Montana provides clear statutory authority for a court to order any proceeds to be deposited in the interpleader action. Section 25-8-101, MCA, provides:

> When it is admitted by the pleading or shown upon examination of a party that the party has in the party's possession or under the party's control any money or other thing capable of delivery that, being the subject of the

10

litigation, is held by the party as trustee for another party or that belongs or is due to another party, the court may order the money or thing, upon motion, to be deposited in court or delivered to the party upon conditions that may be just, subject to the further direction of the court.

¶16 We agree that Montana's rule interpleader is an equitable remedial device that exists in order to avoid the unfairness that may result to some claimants who have competing claims to the interpleader res, but who lose the "race to judgment." We agree, as well, that rule interpleader is an equitable procedure designed to protect against double liability and the expense of defending twice. As part of the continuing inherent authority of the court over its own judgments, the statutory provisions of § 25-8-101, MCA, and pursuant to the equitable power granted by Montana's rule interpleader, the court has authority to stay any execution of judgment before deciding how to distribute the insurance monies equitably. *See Doggett v. Johnson*, 82 Mont 21, 29, 265 P. 673, 674 (1928) (Although the funds were already subject to a writ of execution at the time the stakeholder attempted a deposit with the clerk, this Court determined that the stakeholder was entitled to the protection of an interpleader action). Furthermore, the equitable nature of an interpleader action is not inconsistent with Montana's statutory scheme regarding judgment creditor liens and employment of the rule that first in time is first in right when lien priority is determined. *Boris v. Flaherty*, 672 N.Y.S.2d 177, 180 (NY 1998). Our decision does not alter Montana's general rule that, "[o]*ther things being equal*, different liens upon the same property have priority according to the time of their creation . . ." § 71-3-113, MCA (emphasis added); however, the court has the authority

and discretion to utilize the equitable remedial device of interpleader to determine the scope and nature of the interpleader action.

¶17 We also recognize that Mountain West, as an insurer, has a duty pursuant to § 33-18-201(6), MCA, to "attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear." Mountain West's complaint for interpleader ensures that all claimants will be treated fairly and that the rights of Fitte, its insured, are fully protected. In seeking to determine whether the commercial policy applied to the fire loss, Mountain West was properly availing itself of the procedure this Court has determined an insurer should utilize. *See State Farm Mut. Auto. Ins. Co. v. Freyer*, 2013 MT 301, 372 Mont. 191, 312 P.3d 403; *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 28, 321 Mont. 99, 90 P.3d 381 (an insurer who disputes coverage must seek a judicial determination through a declaratory judgment action). Mountain West, as both a stakeholder facing multiple claims and an insurer disputing coverage under its policy, is not required to choose between pursuing a state interpleader action or a declaratory action in federal court regarding coverage.[3]

¶18 The status of the claims at the time the interpleader action was established remains the determinative factor. *Avant Petroleum, Inc. v. Banque Paribs*, 853 F.2d 140, 144, (2 Cir. 1988) ("We conclude that where an interpleader action is brought to have the court determine which of two parties has priority with respect to the interpleader fund, the court should normally determine priority as of the time the fund was created."); *Texaco*

---

[3] Mountain West had a right to pursue a judicial determination of coverage in federal court, based upon diversity of citizenship: Mountain West is a resident of Wyoming and the other parties are residents of Montana.

*Inc. v. Ponsoldt*, 118 F.3d 1367, 1370 (9th Cir. 1997) (The purpose of rule interpleader is to resolve competing rights and claims and to determine the priority of the claims at the time the interpleader became viable). Here, the District Court concluded that in the absence of a deposit requirement under Rule 22, the date upon which the interpleader action became viable "can only be the date the action was filed." Further, as the District Court aptly determined, the subject of the interpleader was always contemplated to be "all available insurance proceeds." Indeed, DeTienne's response to Mountain West's motion to interplead the $300,000 personal policy specifically noted that "[s]trictly applied, [Rule 22(b)(3)] could result in the discharge of the insurer's liability under all policies, even those whose limits have not been deposited." DeTienne advised it had "no objection to the deposit of the $300,000 from the homeowner's policy as long as it is conditioned as the insurer suggests, that the deposit of that $300,000 does not discharge the insurer from liability under any other policy." As interpleader is an equitable device, it is appropriate for a court to determine the intentions of the parties and the court at the time the interpleader was commenced. Furthermore, Mountain West committed to deposit the commercial policy funds should coverage be established. Mountain West followed through with its representation by moving to deposit the commercial policy funds into the interpleader.

¶19 We conclude the District Court correctly determined that the interpleader action was intended to distribute all available insurance proceeds and that the res, which was the object of the interpleader, was "all available insurance proceeds." The conclusion reached by the District Court was consistent with its equitable role of determining the

13

intent of the court and parties when the interpleader proceeding was initially filed. The existence of judgments against the insured and issuance of writs of execution against the policy proceeds did not preclude the insurer from interpleading all insurance proceeds for the purpose of apportioning funds equitably and fairly amongst the competing claimants.

¶20     2.    *Whether deposit of funds is required to establish the interpleader court's jurisdiction under M. R. Civ. P. 22.*

¶21     Behlmer maintains his judgment lien deserves priority because Mountain West did not take steps to interplead the commercial policy limit until after Behlmer secured his judgment and served a notice of levy and attachment. Along similar lines, DeTienne argues that the filing of the interpleader does not create a lien on funds not yet deposited. He maintains, and the Dissent agrees, that it is the date of deposit that identifies the "fund" that makes up the interpleader. Because the writs were served prior to deposit of the policy proceeds, the resulting lien created a legal obligation that Mountain West was required to pay. These positions, however, ignore the significance of Montana's rule interpleader *not* having a deposit requirement as a prerequisite for establishing and defining the res. As a result, the date the interpleader became viable must be deemed as the date the interpleader action was actually filed—not the date the commercial policy limits were deposited.

¶22     Although the District Court correctly concluded that the commercial policy proceeds must be distributed through the interpleader, we nevertheless deem it appropriate to address the absence in Montana's rule interpleader of a deposit requirement. As the District Court noted, this is not a situation where a subsequent

14

interpleader action displaces a perfected security interest, as Behlmer and DeTienne maintain, because the interpleader action was filed before either Behlmer or DeTienne obtained a judgment.

¶23 Since deposit of the funds is not a jurisdictional prerequisite pursuant to M. R. Civ. P. 22, the interpleader funds or res—all insurance proceeds—were subject to the interpleader action when the complaint for interpleader was filed. In contrast to federal statutory interpleader, federal rule interpleader set forth at Fed. R. Civ. P. 22 does not require formal deposit of the interpleader stake or fund, though deposit may be required in the discretion of the court. *Murphy v. Travelers Ins. Co.*, 534 F.2d 1155, 1159 (5th Cir. 1976); *Percival Constr. Co. v. Miller & Miller Auctioneers, Inc.*, 532 F.2d 166, 171 (10 Cir. 1976) ("the entire sum requirement is not present when interpleading under the Rule."). The District Court correctly observed that "[t]he subsequent deposit of policy proceeds was a procedural step, not a new action."

¶24 We conclude the res of the interpleader is "all insurance proceeds," which the interpleader court must equitably and fairly apportion amongst the competing claimants suffering damages from the Corral Fire. The proceeds of the commercial policy limit belonged to the interpleader court once the federal court determined there was coverage. Accordingly, the commercial policy proceeds were bound for the interpleader; they did not belong to Fitte; and they were not subject to attachment and execution by Behlmer or DeTienne. The deposit of the commercial policy proceeds was not required at the time the interpleader proceeding was commenced and commercial policy proceeds

15

subsequently deposited were properly determined to be part of the res of the interpleader action.

¶25 Based on our resolution of issues one and two, it is unnecessary to address the argument of Behlmer and DeTienne that Mountain West be held responsible for the lien amounts pursuant to § 27-18-407, MCA. We similarly find it unnecessary to address Mountain West's contention that insurance policy proceeds are not personal property subject to execution pursuant to § 25-13-501, MCA.

## CONCLUSION

¶26 The order of the District Court granting summary judgment in favor of Fitte and Mountain West, discharging the writs of execution filed by Behlmer and DeTienne, and staying further execution of the Behlmer and DeTienne judgments pending apportionment of the interpleader fund is affirmed. The interpleader must perform its function of determining the priority and apportionment of competing claims. The commercial policy limit of $1,000,000 is in possession of the interpleader court pending its determination.

/S/ LAURIE McKINNON

We Concur:

/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

16

Justice Michael E Wheat, dissenting.

¶27    I respectfully dissent from the majority. I would hold that Mountain West's untimely attempt to interplead the CGL funds failed because Behlmer and DeTienne had legally established their right and priority to the funds. The following sets out the full timeline of events relevant to this case:

- June 22, 2012—Fitte started a fire on his property that damaged Behlmer and DeTienne's property. Fitte had two insurance policies with Mountain West: a personal liability/homeowners policy with a limit of $300,000, and a commercial policy with a CGL limit of $1 million, and an automotive limit of $500,000.[1]

- January 2, 2013—Behlmer filed a complaint against Fitte in State District Court.

- January 31, 2013—DeTienne filed a complaint against Fitte in State District Court.

- February 25, 2013—Mountain West filed a declaratory judgment action against Fitte in federal district court challenging the CGL coverage under the commercial policy.

- March 25, 2013—While the federal action was pending, Mountain West filed a complaint against Fitte in State District Court to interplead only the homeowners' policy limits.

- May 31, 2013—Mountain West moved to deposit the $300,000 policy limit with the District Court. DeTienne intervened, arguing that Mountain West should be required to name all interested claimants and that both the personal and commercial CGL policy limits should be interpleaded. Mountain West resisted DeTienne's efforts.

- July 10, 2013—The District Court granted Mountains West's motion, and Mountain West deposited $300,000 with the interpleader court. In its order, the court specifically stated that all parties' rights and claims "shall be fully preserved, unaffected, and not prejudiced by the deposit of the funds."

- July 12, 2013—Fitte admitted liability with regard to Behlmer's complaint and agreed to arbitrate Behlmer's damages. Mountain West elected not to participate.

---

[1] The automotive limit is not at issue in this case.

17

- August 19, 2013—The federal court ruled that the commercial CGL policy covered the fire.

- September 13, 2013—Behlmer obtained a $500,000 judgment against Fitte based on the arbitration award.

- September 30, 2013—Behlmer obtained a writ of execution and served a notice of levy and attachment of the CGL funds on Mountain West.

- October 16, 2013—DeTienne obtained a $1.9 million judgment against Fitte.

- November 6, 2013—Mountain West moved to deposit the $1 million CGL proceeds in the interpleader court.

- November 14, 2013—DeTienne obtained a writ of execution and, on November 25, 2013, served a notice of levy and attachment of the CGL proceeds on Mountain West.

- January 2, 2014—The State District Court granted Mountain West's motion to deposit the $1 million in the interpleader court.

- January 6, 2014—Upon the unopposed motion of the plaintiffs, the Behlmer and DeTienne cases were consolidated and Mountain West was joined as a party to the consolidated action.[2]

¶28 Based on the undisputed facts outlined above, Behlmer and DeTienne established priority over the CGL funds prior to the deposit of the funds in the interpleader court. As the District Court noted, "insurance proceeds, generally, may be subject to attachment and execution in a garnishment proceeding where a party obtains a judgement against an insured." *See* §§ 25-13-402(3), and -501, MCA. Behlmer and DeTienne have judgments

---

[2] Despite the majority's statement to the contrary, the consolidation order did not result in the withdrawal of the writs of execution. Rather, the District Court determined that it would "not file Mountain West's motion to discharge the attachment in either action" because the briefing concerning attachment was "premature and thus, improperly filed." As such, the court ordered the parties to "file cross-motions for summary judgement within 30 days of this order regarding whether the plaintiffs may attach the Mountain West policies and if so, whether this gives their claims priority over all other Corral Fire claimants."

18

and have served writs of execution on Mountain West. Both parties also served a notice of levy and attachment of the CGL funds. Accordingly, under § 27-18-307, MCA,[3] Behlmer and DeTienne's judgment lien accrued on September 30, 2013, and November 25, 2013, respectively, when the officer charged with executing the writs attached the CGL policy. The judgment lien, in turn, gave Behlmer and DeTienne priority over all other junior claims pursuant to § 71-3-113, MCA.[4]

¶29 Moreover, the subsequent interpleading of the CGL funds did not disturb the priority of the claims. It is well established that "[t]he interpleader procedure is not intended to alter substantive rights." *Reliance Nat'l Ins. Co. v. Great Lakes Aviation, Ltd.*, 430 F.3d 412, 415 (7th Cir. 2005) (citing *Sanders v. Armour Fertilizer Works*, 292 U.S. 190, 200, 54 S. Ct. 677 (1934); *Avant Petroleum, Inc. v. Banque Paribas*, 853 F.2d 140, 143 (2d Cir. 1988)). There is also no dispute that "[t]he right to retain a lien until the debt secured thereby is paid is a substantive property right." *James Talcott Constr. v. P & D Land Enters.*, 261 Mont. 260, 264, 862 P.2d 395 (1993).

¶30 Accordingly, I find the extra-jurisdictional case law Behlmer and DeTienne rely upon persuasive and dispositive. These cases stand for the proposition that the priority of a claim must remain intact and carry over to a subsequent interpleader action if priority is established before an interpleader action is initiated *and* the funds are deposited with the

---

[3] Under § 27-18-307, MCA, "[a]ll liens by attachment shall accrue at the time the property of the defendant shall be attached by the officer charged with the execution of the writ, in the order in which the writs are levied, and said lien shall not be affected by any subsequent attachment or by any judgment obtained subsequent thereto."

[4] "Other things being equal, different liens upon the same property have priority according to the time of their creation." Section 71-3-113, MCA.

court. *See Texaco Inc. v. Ponsoldt*, 118 F.3d 1367, 1369-71 (9th Cir. 1997); *White v. FDIC*, 19 F.3d 249, 252 (5th Cir. 1994); *Avant Petroleum*, 853 F.2d at 143-44 (2d Cir. 1988).

¶31    In *Avant Petroleum*, the Second Circuit held that "once an interpleader action is commenced and the property *has been deposited with the court . . .* it remains appropriate for the court to determine the relative priorities of the claimants *as of the time the interpleader fund was deposited with the court*." *Avant Petroleum,* 853 F.2d at 144 (emphasis added). In *Texaco*, the Ninth Circuit adopted the reasoning of the Second Circuit and further held that the applicable state law in that case did not alter the rationale that "it makes perfect sense that the [interpleader] action itself cannot be used as a vehicle for further jockeying for claim position. It should just be a straightforward determination of the priority of the claims as they existed at the time the interpleader became viable." *Texaco,* 118 F.3d at 1370. The Ninth Circuit based this reasoning on the fact that the state in question, like Montana,[5] "employs a rule that first in time is first in right when it determines lien priority." *Texaco,* 118 F.3d at 1370.

¶32    Here, the CGL funds did not become viable until the funds were deposited on or after January 2, 2014. As such, Behlmer and DeTienne had a valid, superior interest in the CGL funds when the funds were deposited and they are the rightful owners of the funds. I would hold that Behlmer and DeTienne remain entitled to enforce their respective judgments against Mountain West and that their priority must be respected and maintained in the interpleader action. To hold otherwise, as the majority has, is to ignore

---

[5] *See* § 71-3-113, MCA.

a well-established maxim of our jurisprudence: "The law helps the vigilant before those who sleep on their rights." Section 1-3-218, MCA.

¶33    In conclusion, it must be noted that Mountain West had control of all the moving parts in this case. If Mountain West was so concerned with the claims of all the parties injured by the fire it could have interpleaded all of the insurance proceeds in one court, subject to its coverage challenges, but it did just the opposite—it withheld the CGL policy proceeds from the interpleader fund to the detriment of all the injured parties it claims to now be helping. When we look behind the "equity" smoke screen being generated in this case we see the levers are being manipulated by Mountain West, not Behlmer and DeTienne. Behlmer and DeTienne had every legal right to do and act as they did.

¶34    For these reasons, I dissent.

/S/ MICHAEL E WHEAT

Justice Patricia Cotter joins in the Dissent of Justice Michael E Wheat.

/S/ PATRICIA COTTER