FILED

03/26/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0253

DA 23-0253

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 64N

ADAM PUMMILL, an individual, and ADAM PUMMILL
and KURTIS ROBERTSON as members of, and on behalf of
BLACK GOLD ENTERPRISES, LLC,

Plaintiffs and Appellees,[1]

v.

JOSHUA T. PATTERSON a/k/a JOSH PATTERSON,
as an individual and d/b/a PATTERSON ENTERPRISES, INC.,
also d/b/a ROCKY MOUNTAIN EQUIPMENT, INC.,
p/k/a ROCKY MOUNTAIN JCB, INC., also d/b/a ROCKY MOUNTAIN
RENTAL SPECIALISTS, LLC, also d/b/a ROCKY MOUNTAIN EQUIPMENT
also d/b/a ROCKY MOUNTAIN RENTAL, also d/b/a ROCKY MOUNTAIN
EQUIPMENT OF MISSOULA MONTANA,

Defendants and Appellants.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-18-1450
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellants:

Shane A. MacIntyre, Robert L. Sterup, Brown Law Firm, P.C., Missoula,
Montana

For Appellees:

James P. O'Brien, O'Brien Law Office, P.C., Missoula, Montana

Don St. Peter, Michael O'Brien, Logan Nutzman, St. Peter Law Offices,
P.C., Missoula, Montana

---

[1] The case caption has been edited from its original listing by the Clerk of Court.

Submitted on Briefs:  February 21, 2024

Decided:  March 26, 2024

Filed:

_____
Clerk

2

Justice Jim Rice delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant Joshua T. Patterson (Patterson), as an individual and with affiliated business entities listed herein, appeals two Orders entered in May 2023 by the Fourth Judicial District Court, Missoula County: an Order Allowing Professional Fees, and a portion of the Order Granting Receiver's Motion for Summary Judgment Regarding Fixture Filing and Denying Defendant's Motion to Alter or Amend the Court's March 8, 2023 Order and Stay Dispersal of Funds (Summary Judgment Order), which addressed payment of the requested professional fees. Patterson contends the District Court abused its discretion when it awarded receiver and attorney fees, and by ordering payment of those fees from interplead funds held by the Clerk of Court. While the litigation is still pending before the District Court, these issues are brought on interlocutory appeal pursuant to M. R. App. P. 6(3)(g), as orders concerning a receivership. We address and affirm only the issues properly raised here, and do not address the broader litigation.[2]

---

[2] This proceeding and related matters have been before the Court previously. *See PF2 Leasing, LLC v. Galipeau*, 2021 MT 93, 404 Mont. 53, 485 P.3d 188; *PF2 Leasing, LLC v. Galipeau*, 2021 MT 308, 406 Mont. 436, 499 P.3d 556.

¶3    Black Gold Enterprises, LLC (Black Gold), an Appellee herein, is a limited liability company formed in 2013, with Patterson, Plaintiff Adam Pummill (Pummill) and Plaintiff Kurtis Robertson (Robertson) as its members. Black Gold owned a property located near Bonner, Montana, which consisted of a large structure and equipment yard (the Property). Several other businesses operated by Patterson, including Rocky Mountain Equipment of Missoula Montana (Rocky Mountain Equipment), were commercial tenants in the Property.

¶4    In the initial period after Black Gold was formed, Patterson paid $5,500 per month to Black Gold for his businesses' rental of the Property. In the following years, Patterson began to reduce the rent his entities were paying to Black Gold, and the personal relationships of the parties began to fray. Notwithstanding, on August 15, 2017, Patterson's Rocky Mountain Equipment entered into a loan agreement, as lender, to Black Gold, as borrower, for the amount of $236,000. Patterson signed on behalf of Rocky Mountain Equipment and Pummill signed for Black Gold. Patterson recorded the agreement with the Missoula County Clerk and Recorder to create a lien on the Property in favor of Rocky Mountain Equipment.

¶5    In 2018, Patterson and his business entities ceased making any payments for rental of the Property. Pummill and Robertson, the other two members of Black Gold, approved a Black Gold resolution to retain Don St. Peter (St. Peter) as counsel for Black Gold, over Patterson's objection. In October 2018, St. Peter sent lease agreements to Black Gold's tenants and requested that they sign and return the leases. Pummill and Robertson also

4

approved listing the Property for sale, to which Patterson objected. During this time, Patterson's entities remained in physical possession of the Property.

¶6 In November 2018, St. Peter was discharged as counsel for Black Gold, which retained other counsel. Black Gold, with its members Pummill and Roberston, initiated a suit against Patterson for breach of fiduciary duties, and petitioned the District Court for a preliminary injunction and appointment of a receiver for Black Gold. They requested appointment of James Galipeau as receiver (Galipeau or Receiver), who submitted an affidavit averring he had no conflicts of interest and was otherwise fit to be appointed. Patterson objected, arguing that Galipeau had a conflict of interest in the matter because he had attended Pummill's wedding. On January 25, 2019, the District Court denied the objection, appointed Galipeau, and granted the preliminary injunction. The Receiver's reporting duties included accounting for Black Gold's business activities, its finances and cash flow, and reporting on all receipts and disbursements, including all assets and changes in assets. Following Galipeau's appointment, St. Peter filed a Notice of Appearance as counsel for the Receiver for purposes of reviewing and pursuing Black Gold's claims.

¶7 On March 11, 2019, the District Court entered a Judgment against Patterson, concluding that Patterson and his business entities were in default of rent in an amount of $60,000 as of August 2018. About one year later, on March 13, 2020, the District Court entered an Amended Judgment ordering Patterson's businesses to vacate the Property. Pummill entered the Property to change the locks, install a video surveillance system, and secure the equipment. Shortly thereafter, the Receiver notified Pummill, Robertson, and

5

Patterson that he was preparing the Property for sale and therefore personal Property would need to be removed by May 2021. The Receiver also reported that the Property held a mortgage in the amount of $284,482.16. Litigation ensued over the personal property issue and, in response to the Receiver's sale notice, Patterson and his business entities filed an emergency application for a TRO and preliminary injunction. Receiver countered with a request for approval of a proposed sale of the Property to Gene Senne for $625,000. On June 8, 2021, the District Court denied the TRO requested by Patterson and approved the Receiver's proposed sale, which closed on June 15, 2022.

¶8      Prior to the sale of the Property, Receiver filed a Motion for Summary Judgment Regarding Fixture Filing that contested the validity of the lien on the Property arising from the 2017 loan agreement between Rocky Mountain Equipment and Black Gold. On June 20, 2022, once he received proceeds from the sale, Receiver filed a Motion for Leave to Deposit Funds into Court and a Complaint for Interpleader to interplead $312,833.63 to satisfy the claimed lien from the 2017 loan from Rocky Mountain Equipment to Black Gold that had been recorded against the Property. Patterson filed a counterclaim seeking payment of $312,833.63 for the loan secured by the lien and for removal of the Receiver. On July 13, 2022, the District Court entered an order granting leave for the Receiver to deposit the funds with the Clerk of Court, which explained that the funds would be held in satisfaction of the lien against the Property until such time as the District Court determined the lien's validity. On July 25, 2022, Receiver filed a Motion for Court Approval of Professional Fees in the amount of $107,122.81 for Galipeau as Receiver and $150,540.98

6

for St. Peter as Receiver's attorney. Those requested fees were approved by the District Court on February 21, 2023.

¶9 On May 2, 2023, the District Court entered its Summary Judgment Order that held the claimed lien was invalid with respect to Black Gold. On May 4, 2023, the District Court issued an amended order that directed the Clerk of Court to disperse from the interpleaded funds the amounts approved for fees of the Receiver and St. Peter, slightly reduced from the original approvals. Thus, the total sum of $249,423.79 was dispersed by the Clerk of Court to satisfy these fees. Patterson appeals.

¶10 Whether a party is entitled to recover attorney fees is a question of law. *Chase v. Bearpaw Ranch Ass'n*, 2006 MT 67, ¶ 14, 331 Mont. 421, 133 P.3d 190. "We review a district court's conclusions of law pertaining to the recovery of attorney fees to determine whether those conclusions are correct." *Chase*, ¶ 14. "Where legal authority exists to award attorney fees, we review a trial court's award of attorney fees and costs for an abuse of discretion." *Ferdig Oil Co. v. ROC Gathering*, *LLP*, 2018 MT 307, ¶ 13, 393 Mont. 500, 432 P.3d 118. We likewise use our abuse of discretion standard to review "discretionary trial court rulings" like the payment and timing of such fees. *See May v. First Nat'l Pawn Brokers*, 270 Mont. 132, 132, 890 P.2d 386, 388 (1995). An abuse of discretion occurs when the trial court "acts arbitrarily without conscientious judgment or exceeds the bounds of reason." *State v. Essig*, 2009 MT 340, ¶ 14, 353 Mont. 99, 218 P.3d 838.

¶11    We again note the unique procedural posture of this matter. Patterson challenges the award of fees to the Receiver and the method of payment, although there has not been a resolution on the merits of the case. A partial summary judgment has been entered, but it leaves other issues to be resolved in the litigation.[3] *See* M. R. App. P. 6(5). We reject the Receiver's argument that Patterson has properly raised only the Amended Order Allowing Professional Fees, which was the only order attached to Patterson's amended notice of appeal, and not the earlier order ruling on the reasonableness of the fees. Both notices of appeal addressed the fee issue sufficiently. Likewise, although the Receiver initially argues the Summary Judgment Order addressing the merits is not properly before the court, he nonetheless later argues in his briefing that summary judgment regarding the validity of the lien on the Property was correct ("The District Court did not err in finding that summary judgment regarding the lien was proper. No issues of material fact existed, and the Receiver was entitled to judgment as a matter of law."). However, we do not reach that issue.

¶12    Turning to the issues properly before us, Patterson argues the fees awarded to Receiver and St. Peter are unreasonable and should be vacated. Regarding receiver fees, we have explained that compensation must be "reasonable for the services required of and rendered by a person of ordinary ability and competent for such duties and services."

---

[3] At the time this appeal was filed, a request for a hearing regarding the calculation of back rent owed by Patterson was pending.

*Hickey v. Parrot Silver & Copper Co*., 32 Mont. 143, 156, 79 P. 698, 701 (1905). *Hickey* utilized four factors to consider when determining whether a receiver's fees are reasonable: (1) the value of the property in controversy; (2) the practical benefits derived from the receiver's efforts and attention; (3) the time, labor, and skill needed or expended in the proper performance of the duties imposed, and their fair value, measured by the common business standards; and (4) the degree of activity, integrity, and dispatch with which the work of the receivership is conducted. *Hickey*, 32 Mont. at 156, 79 P. at 701. Patterson asserts that the District Court abused its discretion by "failing to sufficiently apply and consider" the factors before issuing its Amended Order Allowing Professional Fees.

¶13     Regarding the value of the property in controversy, the principal asset of Black Gold was the Property. A few years after formation, Patterson and his business entities apparently began to pay reduced rent for the Property's use, and then quit paying rent altogether, and the District Court entered a judgment declaring that Patterson owed back rent, an amount that remains to be determined. The Property was mortgaged in the amount of $284,482.16 and could have faced eventual foreclosure. The Property was eventually sold for $625,000. Patterson argues that he located another buyer who was prepared to pay $25,000 more, but this arose after Black Gold and Senne had reached an agreement that was ready to proceed to closing. Patterson argues the professional fees are unreasonably high, accounting for roughly 40% of the proceeds, but the fees were driven by the significant effort and expenses the Receiver and counsel undertook to accomplish the sale. The Receiver took over the Property when it was in a state of disrepair and unreadiness to

9

sell and had to rehabilitate it. Receiver had to long litigate with Patterson to resolve Patterson's objections and resistance to both his management of the Property and its eventual sale. The District Court record is replete with filings in this regard. We conclude the first *Hickey* factor weighs in favor of the District Court's determination.

¶14 Regarding the practical benefits derived from the receiver's efforts, Patterson argues the Receiver acted unreasonably by eliminating rental income as a potential revenue stream for Black Gold by selling the Property. The problem with Patterson's argument, of course, is that Black Gold's revenue stream from rent had already been eliminated due to his own actions, and the Property was mired in litigation, including the need to evict Patterson. The Receiver took over a property unfit for use, as the significant personal property left on the Property by Patterson prevented Receiver from selling the Property or finding a new tenant to rent it, which was also burdened with a mortgage. Ultimately, selling the Property to preserve some value for Black Gold was demonstrated to be a reasonable alternative.

¶15 Under the third *Hickey* factor, the "time, labor, and skill needed or expended in the proper performance of the duties imposed, and their fair value, measured by the common business standards," Patterson argues the Receiver's fees totaled nearly eleven times more than the initial $10,000 retainer the District Court authorized. However, the amount of the fees must be considered in light of the entirety of the litigation. The Receiver has been litigating this matter for four years, and was opposed at virtually every juncture, including his appointment, his decision to seek back rent on the Property, his attempt to clear the property, and his decision to seek authorization to sell the Property, while also managing

10

tenant issues and Black Gold's business operations. The issue of Patterson's personal property required a proceeding before a special master and subsequent appeal. Galipeau as Receiver, and St. Peter as his attorney, documented their time and efforts and submitted them to the District Court, which approved them upon its review, including reduction of the requested fees. The issues that had to be addressed by the Receiver bore little relation to the initial retainer approved by the District Court.

¶16 Under the final *Hickey* factor, whether the receiver has shown integrity in the performance of his work, Patterson argues that Receiver has "repeatedly shown a lack of integrity" because he attended Pummill's wedding and because he has purportedly failed to timely file Quarterly Reports in accordance with his duties. However, a wedding photograph, without more, is insufficient to establish a material conflict of interest that would prohibit Receiver's involvement, and no further evidence was submitted on the issue. Regarding the reports, Receiver substantially complied with his obligations. While Patterson states that Receiver failed to provide reports beyond June 2022, at that point Black Gold's only asset—the Property—had been sold. There was little activity that remained to be accounted for.

¶17 Considering the *Hickey* factors holistically, we reject Patterson's claims. The Receiver was involved in time-consuming, onerous work, much of which was perpetuated by Patterson's challenges to his eligibility and competence to perform his duties. Receiver provided practical benefit to Black Gold by preparing to sell and ultimately selling the Property for a reasonable price that satisfied the mortgage and generated additional

proceeds. We conclude that the District Court did not abuse its discretion in awarding fees under the *Hickey* factors.

¶18 Patterson also argues the District Court abused its discretion by ordering the Clerk of Court to disperse funds that represent a significant portion of the proceeds from the sale of Black Gold's Property. Patterson specifically contends that "[t]he Court should not have allowed dispersal of these funds prior to a final disposition of this matter, which has not yet occurred." Thus, in his view, until a final judgment is issued, payment for professional fees should be withheld. The Receiver responds that payment was proper because district courts have the inherent power to distribute interplead funds, here, for services related to the receivership.

¶19 Patterson cites no authority that would require the District Court to wait to disperse funds until after a final disposition is made concerning all underlying claims. This Court has emphasized the "continuing inherent authority of the court over its own judgments," *Associated Dermatology & Skin Cancer Clinic v. Fitte*, 2016 MT 349, ¶ 16, 386 Mont. 150, 388 P.3d 632, and a general recognition of an interpleader's "equitable nature." *Associated Dermatology*, ¶ 16.

¶20 The Receiver's work generated the proceeds, which he deposited with the District Court. The Receiver's work, with his counsel, spanned four years and, as he argues, there was no functional way for Black Gold to satisfy these costs except by using the proceeds from the sale of its only asset. We acknowledge that the lien validity issue may be litigated further, but that does not change Black Gold's obligation to satisfy its professional fee

12

obligations. As the case currently stands, however, the method and timing of payment employed by the District Court was reasonable.

¶21 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the District Court did not abuse its discretion.

¶22 Affirmed.

/S/ JIM RICE

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ DIRK M. SANDEFUR